Colette Draeger v. The State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-121-CR

     COLETTE DRAEGER,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 52nd District Court
Coryell County, Texas
Trial Court # 15,098
                                                                                                                
                                                                                                            
O P I N I O N
                                                                                                                
     A jury convicted Colette Marie Draeger of murder and assessed her punishment at seventy
years’ confinement plus a fine of $10,000. On appeal, Draeger complains that the evidence
was legally and factually insufficient to support her conviction. We find that, based on the
evidence, a rational trier of fact could have found the essential elements of murder to convict
Draeger beyond a reasonable doubt. Furthermore, after a neutral consideration of all of the
evidence, we find that the verdict is not contrary to the overwhelming weight of the evidence. 
Consequently, we hold that the evidence is legally and factually sufficient to support the
verdict. We affirm the judgment.
THE EVIDENCE
      The evidence at trial establishes that on September 26, 1998, Draeger was babysitting the
victim, twenty-two month old Alexis, and her older sister Robin. The girls arrived at
Draeger’s house around 1:30-2:00 p.m. that day. At that time, Alexis appeared normal and
did not have any facial bruising or open wounds. The girls ended up spending the night.
      Late that evening, Draeger called Jennifer, the victim’s mother, told her that she thought
something was wrong with Alexis, and that she needed to come and get her. When Jennifer
arrived, Alexis had bruises on her face, her eye was swollen shut, her lip was split, and she
was unresponsive. Alexis did not have these marks when Jennifer last saw her. Jennifer told
Draeger to call 911.
      Officer John Oster and paramedics Jonathan Vanatta and Leah Newman responded to the
call. According to Vanatta, Alexis appeared lifeless and her breathing was extremely
irregular. Vanatta also noticed that Alexis had bruising around her right eye and her lip was
swollen. Oster spoke to Draeger’s husband, James, about what had occurred. James told
Oster that he was playing video games in the living room late that night, when Alexis walked
in and laid down on the couch. Alexis was having a hard time breathing, so James rolled her
over. Alexis then stopped breathing, so he administered CPR. James also told Oster that
when Alexis was dropped off she had a red mark near her eye. James claimed that as the
evening progressed the eye swelled and started to bruise. 
      Alexis was taken to the emergency room at Darnell Army Community Hospital. Dr.
Carlos Falcon examined Alexis’ injuries. He noted that Alexis had bruising around her right
eye, and on other portions of her head. Dr. Falcon performed a CAT scan on Alexis which
revealed a skull fracture and blood around her brain. He also determined that Alexis’ injuries
were relatively recent, and might have occurred within two to three hours of her arrival. Dr.
Falcon testified that Alexis’ injuries were not caused by normal activity. At 5:15 a.m., Alexis
was transferred to Scott & White Hospital.
      Dr. Deborah Douty and Dr. David Hardy were the treating physicians at Scott & White
Hospital. The admitting physician, Dr. Douty testified that Alexis was unresponsive when she
first arrived. Upon examination, Dr. Douty determined that Alexis had a severe brain injury
and her bruises indicated that the injury was relatively recent. Dr. Hardy, a pediatric critical
care physician, testified that Alexis’ skull fracture was not caused by normal activity. He
stated that her bruises were consistent with either someone hitting her head or her head hitting
some external object. Both Dr. Douty and Dr. Hardy felt that Alexis would have been
rendered unconscious shortly after her injury. Alexis died the following day. 
      An autopsy was later performed on Alexis which concluded that her death was a homicide. 
In addition, the medical examiner discovered a wound on Alexis’ lip and abrasions on the back
of her head which were capable of producing blood. The morning after the incident, both
Draeger and her husband gave statements to the police. James’ statement was consistent with
what he had previously told Officer Oster the night before. Upon request, James consented to
a search of the house. Alexis’ blood was found on a comforter in the master bedroom.
      At trial, the victim’s sister, Robin, testified about the events of that night. Robin stated
that when they went to bed, Alexis was in Draeger’s bedroom while Robin was in a room
nearby. As the night progressed, Robin heard Alexis crying. Robin then overheard Draeger
say to Alexis, “Be quiet or I’ll hit your head up against the wall.” Robin told an investigator
that after she heard Draeger say this, she heard something hit the wall. After this, Robin did
not hear from Alexis again. At trial, a psychologist testified that Robin’s recollection was
from her own information and knowledge.
      Draeger testified in her own defense. Draeger stated that she put the children to sleep
around 8:00 p.m. that night. She then cooked dinner with her husband. Alexis had not yet
fallen asleep, so Draeger took her into the living room and held her until dinner was prepared. 
When dinner was ready, she put Alexis in her daughter’s bedroom. After dinner, Draeger
checked on Alexis and noticed that she was getting up and down in the bed. Draeger told
Alexis to lie down. Draeger went to bed around 10:00 p.m.
      Around 10:30 p.m., Draeger went to the kitchen to take some medication. On her way
back to bed, Draeger checked on the children, and noticed that Alexis was still awake. At
1:06 a.m., Draeger got up to use the bathroom. She claimed that she used the bathroom in her
bedroom and then went back to sleep. 
      The next thing Draeger recalled was James waking her up with Alexis in his arms. They
went into the living room so as not to wake the other children. When they got to the living
room, James handed Alexis to her. Draeger testified that, except for a bruise on her eye which
had been there all along, this was the first time that Alexis did not appear normal. Draeger
was unable to determine what was wrong with Alexis. They then called Jennifer, and told her
that Alexis was having a hard time breathing. Jennifer arrived shortly afterwards. 
      The jury also heard testimony that Draeger attended weekly meetings for spouses that are
abused. Members of her group claimed that Draeger came in shortly after the incident,
appeared nervous, and indicated that she was in some type of trouble. In addition, several
friends and parents who had previously used Draeger as a babysitter testified to Draeger’s
character for patience and nonviolence. However on rebuttal, a former employee of
Draeger’s, Cassandra Kelly, testified to some questionable babysitting practices. Kelly
claimed that Draeger was sometimes away from the children for hours at a time, and would use
profanity toward the children. Kelly also stated that at times Draeger seemed frustrated around
the children, and that she once witnessed Draeger abruptly grab her own child out of a car.
DRAEGER’S APPEAL
      Draeger complains that the evidence is legally and factually insufficient to support a
finding that she murdered Alexis. She asserts that the evidence is clear that her husband,
James, had access to the child and committed the murder.
Legal sufficiency
      In reviewing a legal sufficiency challenge, we view the evidence in the light most
favorable to the prosecution and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Johnson v. State, 23 S.W.3d 1, 5
(Tex. Crim. App. 2000). The evidence is measured by the elements of the offense as defined
by a hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).
      Draeger was charged with the offense of murder. The Penal Code section 19.02 provides
that a person commits the offense if she intends to cause serious bodily injury and commits an
act clearly dangerous to human life that causes the death of an individual. Tex. Pen. Code
Ann. § 19.02(b)(2) (Vernon 1994).
      Draeger claims that the State never proved that she caused the injury to Alexis. At trial,
the victim’s sister, Robin, testified about the events of that night. Robin stated that when they
went to bed, Alexis stayed with Draeger in her bedroom. As the night progressed, Robin
overheard Draeger say to Alexis, “Be quiet or I’ll hit your head up against the wall.” Robin
told an investigator that after she heard Draeger say this, she heard something hit the wall. 
Robin did not hear Alexis again. 
      Medical testimony later confirmed that Alexis’ bruises were consistent with either
someone hitting her head or her head hitting some external object. In addition, the jury heard
evidence that the wound on Alexis’ lip and abrasions on the back of her head were capable of
producing blood which could be left on some object. Draeger testified that she slept in her
bedroom that night, and a blood stain was later found on a comforter in her bedroom which
matched Alexis’ blood.
       Consequently, there is evidence that Draeger and Alexis were together when and where
the injury could have occurred, that Draeger threatened to cause Alexis serious bodily injury,
and that afterwards something hit the wall. We find that, based on this evidence, a rational
trier of fact could have found the essential elements of a murder to convict Draeger beyond a
reasonable doubt. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789; Johnson, 23 S.W.3d at 5;
Guzman v. State, 20 S.W.3d 237, 240 (Tex. App.—Dallas 2000, pet. granted). 
Factual sufficiency 
      In contrast, in reviewing a challenge to the factual sufficiency of the evidence, we must
view all the evidence without the prism of the “in the light most favorable to the prosecution”
construct. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Perkins v. State, 19 
S.W.3d 854, 855 (Tex. App.—Waco 2000, pet. ref’d). Considering all of the evidence this
court “asks whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the
[fact finder’s] determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof.” Johnson, 23 S.W.3d at 11.
      The jury is the sole judge of the facts, the witnesses’ credibility, and the weight to be
given to the evidence. Tucker v. State, 15 S.W.3d 229, 234-35 (Tex. App.—Houston [1st
Dist.] 2000, pet. ref’d) (citing Clewis, 922 S.W.2d at 135). Accordingly, the jury may choose
to believe or not to believe any portion of the witnesses’ testimony. Id. at 235. Reconciliation
of conflicting testimony is within the jury’s exclusive province. Id.
      Draeger argues the verdict is so contrary to the overwhelming weight of the evidence that
it is clearly wrong and unjust. Draeger claims that her last contact with Alexis would have
been on her way back from the kitchen around 10:30 p.m. After this, she states that she did
not see Alexis again until James brought her into her bedroom. According to James’
statement, Alexis came into the living room crying around 12:00 a.m. Draeger claims that
medical evidence indicates that Alexis’ injuries would have caused immediate results and that
she would have been rendered unconscious soon after her injury. Consequently, according to
Draeger, if James’ statement is to be believed, then the injuries occurred while Alexis was in
the living room with him. 
       However, Draeger’s assertions do not establish that the evidence presented at trial was
insufficient to support the jury’s verdict. Johnson, 23 S.W.3d at 6-7. There is conflicting
testimony as to what occurred that night. Reconciliation of this conflict was within the jury’s
exclusive province. Tucker, 15 S.W.3d at 235. 
      The State produced evidence that Alexis actually slept in Draeger’s bedroom that night. 
Consequently, Draeger’s last contact with Alexis would not have been limited to the time-frame that she asserts. In addition, the first physician to treat Alexis determined that Alexis’
injuries occurred within two to three hours of her 2:20 a.m. arrival at the hospital. As a
result, Alexis’ injuries could have occurred earlier than 12:00 a.m., which is contrary to her
argument.
      Furthermore, Robin’s testimony regarding Draeger’s threat directly links Draeger to the
method in which Alexis’ injuries could have occurred. The State also produced evidence that
Alexis’ wounds were capable of producing blood, and that her blood was found in Draeger’s
bedroom. Consequently, there is evidence which places Alexis and Draeger together when and
where the injury could have occurred.
      The jury also heard testimony that Draeger attended spousal-abuse meetings, and that her
character was that of patience and nonviolence. However, evidence was also presented that
Draeger appeared nervous shortly after the incident, and that a former employee had
previously seen her act neglectful and frustrated around other children that she babysat.
      After examining all of the evidence neutrally, giving due deference to the jury's verdict,
we conclude that the verdict is not so contrary to the overwhelming weight of evidence as to be
clearly wrong and unjust. Johnson, 23 S.W.3d at 7. 
CONCLUSION
      We have thoroughly reviewed the evidence presented during the trial. We find, based on
the evidence, a rational trier of fact could have found the essential elements of murder to
convict Draeger beyond a reasonable doubt. Furthermore, after considering all of the evidence
neutrally, we find that the verdict is not contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. Consequently, we hold that the evidence is legally and
factually sufficient to support the verdict. 
      Thus, the judgment is affirmed.
 
                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Davis
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed November 1, 2000
Do not publish