**Cynthia Ann TUCKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–98–00530–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

March 9, 2000.

Stanley G. Schneider, Houston, for appellant.

Alan Curry, Houston, for appellee.

Panel consists of Justices YATES, FOWLER, and FROST.

## OPINION

LESLIE BROCK YATES, Justice.

Appellant, Cynthia Ann Tucker, appeals her conviction for murder raising three issues for review: (1) the trial court abused its discretion in denying her motion for new trial because the State's investigative procedures amounted to a denial of due process; (2) the evidence was factually insufficient to support her conviction because of the unreliability of the State's evidence; and (3) the trial court erred in denying her motion for mistrial after the State injected new and harmful facts into its closing argument. We affirm the judgment of the trial court.

## FACTUAL BACKGROUND

Appellant and the complainant, Albert Frank Orsak began dating in May of 1997; she moved in with him in July. On the night of July 11, 1997, appellant had several drinks at an icehouse near the home she shared with Orsak. Orsak joined appellant between 10:00 p.m. and 10:30 p.m., and had one beer with her. The two went home together before 11:00 p.m.; however, Orsak returned to the icehouse at 1:45 a.m. While Orsak was at the icehouse, Patricia Sury, the bartender, received a telephone call from appellant who said Orsak was drunk, out of control, and had beaten her up.

Sury testified that Orsak kept her company while she closed the bar, and they talked until sometime around 3:00 a.m. She also testified that he did not appear to be intoxicated. An icehouse patron, Leon Lozano, corroborated Sury's testimony. Lozano testified that Orsak arrived at the icehouse at about 1:40 a.m. when last call was being given. Lozano overheard appellant's phone call to Sury. According to Lozano, when he and his wife left the bar at 2:20 a.m., Orsak was still there.

Appellant claimed that Orsak returned home from the icehouse around 1:00 a.m. or 1:30 a.m. She testified that they began arguing and that the argument turned physical. Appellant said Orsak attempted to sexually assault her and she shot him in self-defense. She called several people, including her mother and an ex-boyfriend, between 1:45 a.m. and 2:30 a.m. and told them what had happened. However, appellant did not call 9–1–1 until 5:00 a.m.

Orsak was found dead in his home after paramedics and police officers responded to appellant's 9–1–1 call. At that time, appellant told the police that she shot him because "she got tired of him pestering her." She later told the police that she had acted in self-defense. One of the investigating officers testified that while appellant had some bruises, she did not say they were a result of a fight with Orsak. Appellant had no "remarkable" injuries and there was no evidence of a struggle in the house.

Orsak's body was taken to the morgue. Toxicology results indicated the deceased had a blood alcohol level of .25 grams per deciliter. Dr. Marilyn Gay Murr, an assistant medical examiner, conducted an autopsy at 10:00 a.m., July 12, 1997. During the autopsy, photographs were taken of the body both before and after his clothing was removed. Murr testified that Orsak died of a contact gunshot wound to the head and that such a wound would have caused death very quickly. Murr opined

that the time of death would have been about 3:00 a.m. While she conceded it was possible that death could have occurred at 2:00 a.m., she said it was more likely to have occurred closer to 4:00 a.m. Murr based her opinion as to the time of Orsak's death on her observations—"there was absolutely no rigor mortis and lividity was unfixed."

Carl Kent, a homicide reconstructionist, testified as an expert witness for appellant. He testified that rigor mortis can begin shortly after death or within four to six hours. Kent opined that at the time of the autopsy, rigor mortis had completely set in. He based his opinion on photographs he viewed of the deceased's legs taken during the autopsy. Kent agreed, however, that the person who actually performed the autopsy "would be in a better position to know what the condition of the body was like on July 12, 1997."

After the close of evidence, the jury returned a verdict of guilty. Upon hearing evidence on punishment, the jury assessed appellant's punishment at forty years' confinement in the Texas Department of Criminal Justice—Institutional Division. Appellant filed a motion for new trial which, after a hearing, was denied by the trial court. This appeal followed.

## THE MOTION FOR NEW TRIAL

■ In her first issue for review, appellant complains that the trial court erred in denying her motion for new trial. Appellant argued in her motion for new trial that she was denied due process because of the State's flawed investigative procedures. Specifically, she alleged that Dr. Murr presented false and inaccurate testimony that rigor mortis was not present in the decedent's body at the time the autopsy was performed.

■ The denial of a motion for new trial is reviewed by an abuse of discretion standard; a reviewing court only decides whether the trial court's decision was arbitrary or unreasonable. *See Lewis v. State,*

911 S.W.2d 1, 7 (Tex.Crim.App.1995). Because the judge is the trier of fact at a hearing on a motion for new trial, we will not second guess the trial court's judgment concerning the credibility of witnesses. *See id.* Moreover, "if the circumstances could be reasonably interpreted several ways, given the conflicting or ambiguous evidence, and the court selects one of those interpretations, then its action constitutes a legitimate exercise of discretion." *Santacruz v. State,* 963 S.W.2d 194, 196 (Tex. App.—Amarillo 1998, pet. ref'd) (citing *Keady v. State,* 687 S.W.2d 757, 759 (Tex. Crim.App.1985)).

■ To show a violation of due process by way of the State's investigative procedure, the trial that results must be "lacking in the rudiments of fairness." *Ex Parte Brandley,* 781 S.W.2d 886, 891 (Tex. Crim.App.1989). In order to determine whether there has been a denial of due process, we look to the totality of the circumstances, including the identification procedure, the use of perjured testimony, any failure to correct unsolicited perjured testimony, the suppression of evidence favorable to the accused, a coerced confession, and the concealment of a material witness whose testimony creates reasonable doubt where there was none. *See id.*

The complainant's time of death was a hotly contested issue at trial and at the hearing on the motion for new trial. The State's theory of the case was that the killing was pre-meditated. The State sought to establish that appellant, prior to shooting Orsak and to firm up her claim of self-defense, made several telephone calls saying she had shot the deceased because he was attempting to sexually assault her. Under the State's version of events, the complainant returned to his home after the appellant's phone calls and was shot sometime between 3:00 a.m. and 5:00 a.m. Appellant's version was that she shot Orsak in self-defense after he attempted to sexually assault her. Appellant maintained that she shot Orsak just before she called

her mother and her friend at about 2:00 a.m.

There was conflicting scientific evidence offered at trial as to the time of death. Dr. Murr, who performed the autopsy, testified that rigor mortis had not set in. She testified further that the absence of rigor mortis indicated the time of death could not have been before 3:00 a.m. Kent, the expert for the defense, testified to the contrary. He said that based on his evaluation of photographs taken during the autopsy, rigor mortis was present; he believed the time of death to be closer to 2:00 a.m.

At the hearing on the motion for new trial, appellant presented the testimony of two medical examiners, including the chief medical examiner of Harris County. Both doctors testified the autopsy photographs clearly showed the presence of rigor mortis and that it was possible the deceased had died at 2:00 a.m.[1] Dr. Murr testified at the motion for new trial hearing that her opinion was the same as it had been at trial—rigor mortis was not present at the time of the autopsy.

The only argument made by appellant to show a denial of due process is her allegation that Dr. Murr gave false testimony as to the time of death. A disagreement between experts does not support an allegation that false testimony was given, nor does it support a claim of denial of due process. All of the experts who testified as to the time of death, whether at the original trial or at the hearing on the motion for new trial, stated that determining the time of death based on the presence or absence of rigor mortis was no more than an educated guess. Each had a different opinion as to when rigor mortis begins to set in, but they all testified to basically the same range. Moreover, the experts who testified on behalf of appellant conceded that the person who actually touched the body was in the best position to evaluate and manipulate the body to determine whether rigor mortis was present.

At trial, the jury heard conflicting evidence regarding the time of death and apparently chose to believe the testimony of Dr. Murr. At the hearing on the motion for new trial, the trial court also heard conflicting expert testimony as to the presence of rigor mortis and as to the time of death. Based on the conflicting testimony, it was within the judge's discretion to deny the motion for new trial. Furthermore, we disagree with appellant's contention that Murr's testimony was so wrong and prejudicial that it deprived appellant of due process. Appellant's first issue for review is overruled.

## FACTUAL SUFFICIENCY

 In her second issue for review, appellant complains that the evidence is factually insufficient to support her conviction for murder. In conducting a factual sufficiency review, we view "all the evidence without the prism of 'in the light most favorable to the prosecution' and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim.App.1996). The appellate court is authorized to disagree with the jury's determination, even if probative evidence exists which supports the verdict. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim. App.1996). However, a factual sufficiency review must be appropriately deferential so as to avoid substituting our own judgment for that of the fact finder. *See id.* We are authorized to set aside a jury's finding only in instances where it is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." *See id.*

The jury is the sole judge of the facts, the witnesses' credibility, and the weight

---

1. The chief medical examiner, Dr. Carter, amended Murr's original autopsy report to reflect the presence of rigor mortis. The report was also amended to reflect a more accurate description of the gunshot wound.

to be given to the evidence. *See Clewis,* 922 S.W.2d at 129. Accordingly, the jury may choose to believe or not to believe any portion of the witnesses' testimony. *See Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1985). If the record contains conflicting testimony, conflict reconciliation is within the jury's exclusive province. *See Heiselbetz v. State,* 906 S.W.2d 500, 504 (Tex.Crim.App.1995).

Self-defense is subject to a factual sufficiency review. *See Shaw v. State,* 995 S.W.2d 867, 868 (Tex.App.—Waco 1999, no pet.). "When the defendant introduces evidence that he acted in self-defense, the State bears the burden of showing beyond a reasonable doubt that the force used was not reasonable or justified." *Id.; see also Saxton v. State,* 804 S.W.2d 910, 913 (Tex.Crim.App.1991). While the State bears the burden of persuasion on the self-defense issue, it does not have a burden of producing evidence to affirmatively refute self-defense. *See Saxton,* 804 S.W.2d at 913. A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *See id.*

Appellant points to three specific pieces of evidence in her factual sufficiency challenge which, according to her, create a verdict that is against the great weight and preponderance of the evidence. First, appellant suggests that the testimony of Sury, the bartender, was "questionable at best" because she stated that Orsak was not intoxicated when she saw him in the early morning hours of July 12, 1997, when in fact his blood alcohol content was over twice the legal limit for determining intoxication. Appellant argues that this discrepancy between Sury's opinion and the results of the blood alcohol test clouds her entire testimony. However, we fail to see how Sury's opinion regarding intoxication, whether found to be right or wrong, calls the rest of her testimony into question. Moreover, it is within the province of the jury to determine the credibility of the witnesses and to decide what weight to give their testimony.

Second, appellant points to a disagreement over the type of wound suffered by the complainant.[2] A disagreement between experts does not render the verdict factually insufficient. As stated above, the reconciliation of conflicts in evidence is within the specific province of the jury. Moreover, on this point, we note that appellant would have us consider the expert testimony from the motion for new trial as support for her allegation that Dr. Murr gave false testimony. Because the testimony of the witnesses at the hearing on the motion for new trial was not before the jury, we cannot properly consider it in a factual sufficiency review. *See Blackmon v. State,* 926 S.W.2d 399, 402 (Tex. App.—Waco 1996, pet. ref'd).

Finally, appellant argues that Orsak's unzipped pants[3] is significant physical evidence supporting her testimony that Orsak was attempting to assault her and that she shot him in self-defense. While we agree that this evidence supports appellant's claim of self-defense, there was other evidence from which the jury could have concluded that appellant's self-defense claim was fabricated. For example, appellant did not report an attempted sexual assault to the police officers or paramedics who responded to the 9–1–1 call. Moreover, appellant did not have any remarkable recent injuries, nor were there any signs of a struggle. Further, as noted above, the State's witnesses testified that Orsak was still at the icehouse at the time appellant was placing phone calls, informing a friend and her mother that she had killed Orsak in self-defense. Finally, the State's expert

---

**2.** Apparently, the experts were in agreement that the gunshot wound was a contact wound. The disagreement arose concerning the description of the gunshot wound in the autopsy report and whether a laceration or tear was present.

**3.** An autopsy photograph of Orsak's body taken before his clothes were removed shows the zipper of his shorts to be unzipped.

testimony concerning the time of death was inconsistent with appellant's rendition of the facts. The jury was entitled to believe the State's witnesses and to disbelieve the defense witnesses. Accordingly, we find that the jury's verdict is not against the great weight and preponderance of the evidence. We overrule appellant's second issue for review.

## JURY ARGUMENT

■ In her third issue for review, appellant complains that the trial court erred in overruling her motion for mistrial during the State's closing argument. Appellant contends the prosecutor injected new and harmful facts during the State's argument.

■ The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *See Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980). Proper jury argument consists of: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answer to the argument of opposing counsel, and (4) a plea for law enforcement. *See Felder v. State,* 848 S.W.2d 85, 94–95 (Tex.Crim.App.1992).

■ A prosecuting attorney is permitted to draw all inferences that are reasonable, fair, and legitimate from the facts in evidence, but she may not use jury argument to place before the jury, either directly or indirectly, evidence that is outside the record. *See Borjan v. State,* 787 S.W.2d 53, 57 (Tex.Crim.App.1990). Thus, references to facts that are neither in evidence, nor inferable from the evidence are improper. *See id.* Furthermore, a prosecutor may not inject personal opinion in statements to the jury or imply a special expertise about a contested factual matter. *See Johnson v. State,* 698 S.W.2d 154, 167 (Tex.Crim.App.1985).

Defense counsel made the following statements during his closing argument before the jury in the guilt-innocence phase of the trial:

Also, how did Albert Orsak's zipper get undone at the morgue? If you're going to sexually assault somebody aren't you going to undo your zipper? Maybe they took a picture of him when they tried to take his pants off. Does that make sense? They're going to take a picture of the body before they remove the clothes, before they touch the clothes. They're going to take a picture of the knees and the bloodstains on the knees. That's what they're taking a picture of. And then they remove the clothes. Then they start removing the clothes. Why was he undoing his zipper if he wasn't trying to sexually assault Cynthia Tucker? Why in the living room?

In response to this argument, the prosecutor made the following argument:

PROSECUTOR: This man is not a rapist. *Autopsy photos always have unzipped clothes. I know it.*

DEFENSE COUNSEL: There's no evidence of that, Your Honor.

THE COURT: Sustained.

DEFENSE COUNSEL: Ask the Court to instruct the jury to disregard the last comment.

THE COURT: Disregard the comment. Don't consider it.

DEFENSE COUNSEL: Ask for a mistrial.

THE COURT: Denied.

PROSECUTOR: You look at the autopsy pictures. They take pictures of people when they've got their clothes on and when they don't have their clothes on. And obviously, during the autopsy the clothing gets removed. That's ridiculous. That's silly, and [Defense Counsel] knows that it's sil-

ly. That's not any evidence of a raping going on here.

(Emphasis added).

Appellant correctly points out that there was no evidence before the jury that the medical examiner's office routinely unzips pants on the body of a deceased person before taking photographs of the clothed body. Therefore, the prosecutor's argument that, "autopsy photos always have unzipped clothes. I know it." was outside the record. The State maintains that the complained of statement was a proper response to defense counsel's argument that the unzipped pants were evidence of the attempted sexual assault. We disagree.

■ The invited argument rule permits prosecutorial argument outside the record only in response to defense argument which goes outside the record. *See Wilson v. State*, 938 S.W.2d 57, 60 (Tex.Crim. App.1996). In other words, "a prosecutor may not stray beyond the scope of the invitation." *Johnson v. State*, 611 S.W.2d 649, 650 (Tex.Crim.App.1981). Here, defense counsel was attempting to argue a reasonable deduction from the evidence. His statements were not outside the record, but were merely possible explanations for the photograph depicting Orsak's unzipped pants. The prosecutor's response that she had personal knowledge concerning autopsy photographs was outside the record and "strayed beyond the scope of the invitation." Accordingly, we find that the complained of argument did not fall into one of the four permissible categories and was improper. We next consider whether the improper remark was cured by the trial court's instruction to disregard.

■ Generally, an instruction to disregard an improper jury argument is sufficient to cure any harm. *See Dinkins v. State*, 894 S.W.2d 330, 357 (Tex.Crim. App.1995) (citing *Anderson v. State*, 633 S.W.2d 851, 855 (Tex.Crim.App. [Panel Op.] 1982)). However, the court's instruction to disregard has no curative effect

when the argument is extreme, manifestly improper, injects new and harmful facts into the case, or violates a mandatory statutory provision and is thus so inflammatory that its prejudicial effect cannot reasonably be removed from the minds of the jurors by the instruction given. *See Hernandez v. State*, 819 S.W.2d 806, 820 (Tex. Crim.App.1991). In this case, the prosecutor's remark injected "new and harmful" facts before the jury by arguing facts outside the record which potentially impacted appellant's claim of self-defense. When such is the case, an instruction to disregard has no curative effect. *See id.* We therefore hold that the instruction to disregard was ineffective. Having so found, we conclude that the trial court erred in denying appellant's motion for mistrial.

■ We now must determine whether such error warrants reversal. *See* Tex.R.App. P. 44.2. The proper harm analysis depends on the kind of error involved. The Court of Criminal Appeals has characterized erroneous rulings regarding improper comments during jury argument as encompassing non-constitutional or "other error" within the purview of Rule 44.2(b). *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App.1998); *Ortiz v. State*, 999 S.W.2d 600, 605–06 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Rule 44.2(b) requires us to examine error in relation to the entire proceeding to determine whether it had a "substantial and injurious effect or influence in determining the jury's verdict." *See King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Ortiz*, 999 S.W.2d at 606. In other words, "[a] criminal conviction should not be overturned for non-constitutional error if the appellate court, after reviewing the record as a whole, has assurance that the error did not influence the jury or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

■ In *Mosley*, the court relied on the following three factors to analyze the harm associated with improper jury argument and to determine whether reversal was

required: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *See Mosley*, 983 S.W.2d at 259.

The *Mosley* court found that the first factor (severity of the misconduct) did not weigh very heavily in Mosley's favor because the inappropriate argument of the prosecutor did not inject new facts into the record; thus, the jury was in a position to evaluate the truthfulness of the prosecutor's assertion. In contrast, the argument of the prosecutor in this case did inject new facts into the record. Further, the argument was calculated to negate appellant's interpretation of the only piece of physical evidence she offered to show self-defense. It is very likely that the jury, upon hearing the improper comment and being unable to evaluate the truthfulness of the remark, attached great weight to it coming from the prosecutor, who could be seen as having some special expertise in the realm of autopsies.[4]

Turning to the second factor (measures adopted to cure the misconduct), we note that the trial court immediately instructed the jury not to consider the comment.[5] Furthermore, following the court's ruling, the prosecutor attempted to cure the error by explaining that *based on the photographs in evidence*, the jury could conclude the victim's clothes were removed during the course of the autopsy and thus the unzipped pants were not evidence of a "rape." Additionally, the court instructed the jury in its charge not to "consider,

discuss, nor relate any matters not in evidence before you."

Next, we look at the certainty of conviction absent the misconduct. As noted above, the State introduced both physical evidence and testimony from witnesses which directly contradicted appellant's claim that she shot the complainant in self-defense. While the evidence rebutting appellant's self-defense claim was circumstantial, it was strong and came from multiple sources. In contrast, neither the prosecutor's comment, nor appellant's explanation for the deceased's unzipped pants in the autopsy photos, conclusively established whether the deceased was in the process of sexually assaulting appellant. Therefore, regardless of the prosecutor's comment, appellant's claim of self-defense was tenuous.

In addition to the *Mosley* factors, the emphasis placed on the improper comment and the cumulative effect of multiple errors are appropriate considerations in determining the injurious effect of the argument. *See Reed v. State*, 991 S.W.2d 354, 364 (Tex.App.—Corpus Christi 1999, pets. ref'd) (citing *King v. State*, 953 S.W.2d 266, 271–73 (Tex.Crim.App.1997) and *Stahl v. State*, 749 S.W.2d 826 (Tex.Crim.App. 1988)). Here, there was minimal emphasis placed on the single improper comment. Thus, while the prosecutor's comment was both erroneous and prejudicial, we find that the injurious effect was not so great as to warrant reversal.

After reviewing the record as a whole, we are confident that the improper argument had but a slight effect, if any, on the jury. Accordingly, we find the error to be harmless.

---

4. In fact, the prosecutor's comment was not only improper, but incorrect. At the hearing on motion for new trial, Dr. Murr testified that the complainant's pants were not unzipped before the photograph was taken. Murr further stated that normal procedure is to first photograph the body clothed, and then to remove the clothing after the photographs are taken.

5. While we have previously held that the instruction to disregard, standing alone, was ineffective to cure the error, the fact that an instruction was promptly given is an appropriate factor to consider in determining whether the improper argument was harmless.

The judgment of the trial court is affirmed.