Opinion issued November 7, 2002













  





In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-01-00911-CR
____________
 
GREGORY THOMPSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 803271
 

 
 
O P I N I O N
          A jury found appellant, Gregory Thompson, guilty of third degree felony theft
of property worth more than $20,000, but less than $100,000, and assessed
punishment at 10 years confinement and a $10,000 fine. In five points of error,
appellant argues that the evidence was legally and factually insufficient to support his
conviction, the trial court erred in denying his motion for a mistrial based on improper
jury argument by the State at the punishment phase of trial, and he received
ineffective assistance of counsel at the punishment phase of trial when his trial
counsel failed to request the trial court to instruct the jury to disregard the State’s
improper jury argument.
          We affirm appellant’s conviction but reverse and remand for a new punishment
hearing.
Facts and Procedural Background
          At trial, Lawrence Gunnels, the owner of Gunnels Used Cars, testified that he
is a licensed wholesale automobile dealer and operates his business in Harris County. 
In the summer of 1998, appellant


 was acting as an agent of Gunnels with permission
to use Gunnels’s dealer license number to buy and sell vehicles. On July 24, 1998,
Gunnels’s bank was presented with a sight draft in the amount of $26,800 for a 1997
Chevrolet Suburban purchased by appellant from another dealership. Gunnels
explained that, generally, when one of his agents buys a vehicle from another dealer
using a sight draft, Gunnels’s bank pays the seller and Gunnels then seeks
reimbursement from his agent. Here, appellant signed the sight draft, which was then
paid by Gunnels’s bank. On August 4, 1998, appellant presented Gunnels’s
dealership with a personal check for $26,800. Appellant was given the Suburban and
the title. Approximately three days later, appellant’s bank notified Gunnels that
appellant’s account was closed and the check would not be honored. Gunnels tried
to contact appellant regarding the check but was initially unsuccessful. Gunnels
testified that appellant later told him he was trying to sell some property and would
“make good” on the check, but he never reimbursed Gunnels. Gunnels subsequently
filed charges against appellant.
          Harris County Assistant District Attorney John Boone, Chief of the Check
Fraud Division, testified that he reviewed records of appellant’s bank account, which
were admitted into evidence. His review of those records indicated appellant’s
account had been opened in April of 1998 and was closed on May 19, 1998, more
than two months before appellant wrote the check at issue. Appellant’s bank records
reflected a maximum account balance of $1,025. Boone further testified that, in
October of 1998, his office sent two demand letters to appellant by certified mail,
return receipt requested. At least one of those letters was received and signed for by
appellant.
          Texas Department of Public Safety Sergeant Keith Kucifer, of the motor
vehicle division, reviewed the title history of the vehicle in question and testified that
those records indicated appellant sold the Suburban to Grant U. Hardeway, Sr.


 on
August 7, 1998 for $2,000. Sergeant Kucifer also testified that, based on his
investigation of this matter, he determined the address listed as appellant’s address
on the check at issue was actually the address of a restaurant and was not an address
of property owned by appellant.
          On December 27, 2000, Sergeant Kucifer received an anonymous tip regarding
appellant’s whereabouts. Kucifer went to the location, which was another car
dealership, to arrest appellant based on an outstanding felony warrant. When Kucifer,
accompanied by Houston Police Officer Derek Rice, attempted to arrest appellant,
appellant shoved Kucifer and Rice aside and fled on foot through a vacant lot. 
Sergeant Kucifer and Officer Rice managed to apprehend appellant after a short
chase, and Kucifer characterized appellant’s resistance to the arrest as “extremely
violent.”
          Yolanda Nuncio, a manager for Wells Fargo Bank, testified that she had
located in their records a cashier’s check dated August 7, 1998 drawn by Grant U.
Hardeway and made payable to Gunnels Used Cars in the amount of $10,000. The
cashier’s check bore a notation with the same vehicle identification number (VIN) as
the Suburban. However, Nuncio could not tell whether the cashier’s check was ever
cashed or deposited into an account and did not know whether the check was
deposited into Gunnels’s account.
          Tonya Taylor, office manager for Gunnels Used Cars, testified that she
searched the dealership’s records and located a slip for a $10,000 deposit made close
to the date shown on the face of the cashier’s check, but their records did not indicate
the source of the deposit or whether it was a deposit of a check to pay for a particular
vehicle. Taylor testified that the dealership receives approximately 20 to 30 checks
per day and never received any correspondence from appellant telling them to credit
the cashier’s check against his purchase of the vehicle in question. Taylor examined
the cashier’s check admitted into evidence and did not recognize any of the account
numbers shown on the back of that check.
          The jury found appellant guilty of theft of property worth more than $20,000,
but less than $100,000. During closing argument at the punishment phase of trial, the
State argued to the jury as follows:
Ladies and gentlemen, there’s something important that I cannot tell you
about concerning why you should not give [appellant] anything less than
ten years. There’s a very important reason but legally I’m not allowed
to tell you what it is but it is very important. Trust me on this. If you
give [appellant] less than ten years, you will find out later what’s going
to happen.

Appellant’s objection to this argument as “outside the record” was sustained. 
Appellant then moved for a mistrial, which was denied. The jury assessed the
maximum punishment available—10 years confinement and a $10,000 fine. 
Sufficiency of the Evidence
          In his third and fourth points of error, which we address first, appellant
contends the evidence was legally insufficient to support his conviction for theft of
property worth more than $20,000 because a subsequent payment of $10,000 showed
he lacked the intent to deprive the owner of the full value of the property.
          A person commits a third degree felony theft if, without the owner’s consent,
the person unlawfully appropriates property worth more than $20,000, but less than
$100,000 with the intent to deprive the owner of the property. Tex. Pen. Code Ann.
§ 31.03 (Vernon Supp. 2002). It is prima facie evidence that an accused intended to
permanently deprive the owner of the property at issue if the accused purchased the
property with a check written on a closed account. Tex. Pen. Code Ann. § 31.06(a)
(Vernon Supp. 2002); Steele v. State, 22 S.W.3d 550, 554-55 (Tex. App.—Fort Worth
2000, pet. ref’d).
          A legal sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. 
King v. State, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000).
          Here, appellant wrote a $26,800 check to Gunnels on a closed account to pay
for the Suburban purchased by Gunnels, thus, creating a presumption that he intended
to permanently deprive Gunnels of the property. Tex. Pen. Code Ann. § 31.06; see
Steele, 22 S.W.3d at 552. To rebut the presumption that appellant intended to deprive
Gunnels of the full amount of $26,800, appellant attempted to show that the purchaser
of the Suburban, Grant U. Hardeway, Sr., paid Gunnels $10,000 for the vehicle, by
cashier’s check, within three days of appellant’s presentation of his bad check. 
Although Gunnels’s office manager testified that a $10,000 deposit was made within
a short time of the date on the face of the cashier’s check, appellant presented no
evidence that Gunnels ever received, cashed, or deposited the cashier’s check from
Hardeway. No evidence was presented that appellant ever attempted to “make good”
on his personal check or apply the cashier’s check to his debt to Gunnels. Based on
the record, we conclude a rational trier of fact could have found, beyond a reasonable
doubt, that appellant intended to deprive Gunnels of the full amount of $26,800.
          We overrule appellant’s third and fourth points of error.
          In his fifth point of error, appellant argues that the evidence was factually
insufficient to support his conviction based on the same grounds alleged in his third
and fourth points of error.
          In reviewing the factual sufficiency of the evidence, we examine all the
evidence neutrally and ask whether proof of guilt is so obviously weak or greatly
outweighed by contrary proof as to indicate that a manifest injustice has occurred. 
King, 29 S.W.3d at 563. In conducting our analysis, we may disagree with the jury’s
determination, even if probative evidence supports the verdict, but we must also avoid
substituting our judgment for that of the fact finder. Id. “What weight to give
contradictory testimonial evidence is within the sole province of the jury because it
turns on an evaluation of credibility and demeanor.” Cain v. State, 958 S.W.2d 404,
408-09 (Tex. Crim. App. 1997).
          Appellant contends the evidence showed merely an intent to deprive Gunnels
of $16,800. As noted above, the evidence showed, at best, a conflict regarding
whether Hardeway’s cashier’s check was received and deposited by Gunnels. The
jury was entitled to resolve any conflicts in the evidence. Id. at 410. A jury decision
is not manifestly unjust merely because the jury resolved conflicting views of
evidence in favor of the State. Id. Based on the record, we conclude the evidence
was factually sufficient to support appellant’s conviction.
          We overrule appellant’s fifth point of error.
 
Improper Jury Argument
          In his first point of error, appellant argues that the trial court erred in denying
his motion for mistrial based on improper argument by the State at the punishment
phase of trial.
          The law provides for, and presumes, a fair trial free from improper argument
by the State. Long v. State, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991). There are
four permissible areas of jury argument: (1) summation of the evidence, (2)
reasonable deductions from the evidence, (3) answers to the argument of opposing
counsel, and (4) pleas for law enforcement. Cifuentes v. State, 983 S.W.2d 891, 895
(Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).
          In its brief, the State asserts “the argument in the present case was clearly a plea
for law enforcement.” We disagree. The argument complained of fell well outside
the permissible areas of argument:
Ladies and gentlemen, there’s something important that I cannot tell you
about concerning why you should not give [appellant] anything less than
ten years. There’s a very important reason but legally I’m not allowed
to tell you what it is but it is very important. Trust me on this. If you
give [appellant] less than ten years, you will find out later what’s going
to happen.

We note that a “defendant may not be released on bail pending the appeal from any
felony conviction where the punishment equals 10 years confinement.” Tex. Code
Crim. Proc. art. 44.04(b) (Vernon Supp. 2002). Whether the State was alluding to
this provision or something else, the jury was put in the position of having to
speculate on a “very important” matter not before it.
          It has long been established that a prosecutor cannot use closing argument to
place matters before the jury that are outside the record and prejudicial to the accused. 
Everett v. State, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986). Arguments 
referencing matters that are not in evidence and may not be inferred from the
evidence are usually “designed to arouse the passion and prejudices of the jury and
as such are highly inappropriate.” Borjan v. State, 787 S.W.2d 53, 57 (Tex. Crim.
App. 1990). Argument inviting speculation is of grave concern:
Argument injecting matters not in the record is clearly improper; but
argument inviting speculation is even more dangerous because it leaves
to the imagination of each juror whatever extraneous ‘facts’ may be
needed to support a convicion.

Everett, 707 S.W.2d at 641 (quoting Berryhill v. State, 501 S.W.2d 86, 87 (Tex. Crim.
App. 1973) (emphasis added)). Whether the prosecutor was alluding to article
44.04(b) or some other matter not before the jury, it clearly invited the jury to
speculate on something “very important,” which would support a maximum sentence. 
The argument was clearly improper.
          Although appellant objected to the argument and requested a mistrial, he failed
to request an instruction to disregard. Generally, the appropriate remedy for improper
argument is an instruction to disregard. McGinn v. State, 961 S.W.2d 161, 165 (Tex.
Crim. App. 1998). Requesting a mistrial is insufficient to preserve error in most
circumstances because the appropriate remedy for a curable, erroneous argument to
which an objection has been sustained is an instruction to disregard. Id. However,
if the prejudice arising from the improper argument is incurable, a mistrial is
appropriate and a request for a mistrial will preserve error on appeal. Id.; Cockrell
v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Thus, if the prejudice created
by the improper argument was curable by an instruction to disregard, error was not
preserved. We must determine whether the prejudicial effect of the argument was
incurable.
          The harm arising from improper jury argument is incurable if the argument (1)
is extreme, improper, injects new and harmful facts into the case, or violates a
mandatory statutory provision and (2) as a result, is so inflammatory that its
prejudicial effect cannot reasonably be cured by an instruction to disregard. Long,
823 S.W.2d at 267; Logan v. State, 698 S.W.2d 680, 682 (Tex. Crim. App. 1985).          Here, the prosecutor’s remarks injected “new and harmful” facts into the
proceeding by asking the jury to consider, outside the evidence presented, “something
important that I cannot tell you about.” The argument, as stated, invited the jury to
consider a matter not before it. The prosecutor’s remarks were also “extreme and
improper” in that he urged the jury to consider matters outside of the trial record
while simultaneously acknowledging that to do so was prohibited by law. The
prosecutor essentially urged the jury to ignore the rule of law and “[t]rust me on this.”
          The argument was, by its very nature, inflammatory. The prosecutor told the
jury there was “a very important reason” they should give appellant the maximum
sentence, but he was “legally” prohibited from telling them what it was. If the jury
gave appellant anything less than the maximum, they would “find out later what’s
going to happen.” The very tone of the argument was that something bad, if not
horrible, would happen if the jury failed to assess the maximum sentence. As noted
above, such argument is inherently “dangerous.” Everett, 707 S.W.2d at 641. Here,
an instruction from the trial court to the jury to disregard such a comment would have
had no curative effect.
          Mistrial is an appropriate remedy when, as here, the objectionable event is so
inflammatory that a curative instruction is not likely to prevent a jury from being
unfairly prejudiced against a defendant. Young v. State, 73 S.W.3d 482, 485 (Tex.
App.—Houston [1st Dist.] 2002, pet. filed). Because the prejudicial effect of the
manifestly “dangerous” and improper argument was incurable, we hold that, by
requesting a mistrial, appellant made a proper request for relief in this instance,
preserving error for our review. See Montoya v. State, 744 S.W.2d 15, 37 (Tex. Crim.
App. 1987). We further hold that the trial court erred in denying appellant’s motion
for mistrial.
          We must next determine whether the trial court’s error requires reversal. See
Tex. R. App. P. 44.2. A careful reading of Rule 44.2 and relevant case law reveals
several types of error that can occur in criminal cases: (1) constitutional error that is
not subject to harmless error analysis (i.e., structural error); (2) constitutional error
that is harmful; (3) constitutional error that is harmless; (4) non-constitutional error
that is harmful (i.e., affects a substantial right); and (5) non-constitutional error that
is harmless (i.e., does not affect a substantial right). Trahan v. State, 991 S.W.2d 936,
941 (Tex. App.—Houston [1st Dist.] 1999, no pet.). When conducting a Rule 44.2
harm analysis, our first task is to determine whether the error is of constitutional
magnitude or an error that affects a substantial right. See id.
          The Court of Criminal Appeals has characterized erroneous rulings regarding
certain types of improper jury argument as non-constitutional “other errors” within
the scope of Rule 44.2(b). See Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim.
App. 1998). In Mosley, the court was faced with assessing the harm caused by an
improper argument concerning the honesty and integrity of defense counsel. Mosley,
983 S.W.2d at 258-59. The court specifically distinguished attacks on defense
counsel from arguments that may result in constitutional violations and noted that,
“[a]lthough a special concern, improper comments on defense counsel’s honesty have
never been held to amount to a constitutional violation.” Id. at 259. The court then
conducted a harm analysis pursuant to Tex. R. App. P. 44.2(b). Mosley, 983 S.W.2d
at 260.
          We distinguish Mosely. Here, by urging the jury to consider matters not before
them, and while effectively acknowledging that to do so was a violation of their
solemn oath


 as jurors, the prosecutor’s remarks violated the Due Process Clause of
the Fourteenth Amendment


 and implicated the Confrontation Clause of the Sixth
Amendment.


 The ability to test the accuracy of evidence is “so important that the
absence of proper confrontation at trial ‘calls into question the ultimate integrity of
the fact-finding process.’” Ohio v. Roberts, 448 U.S. 56, 63, 100 S. Ct. 2531, 2538
(1980) (quoting Chambers v. Mississippi, 410 U.S. 284, 295, 93 S. Ct. 1038, 1046
(1973)). Here, the ability to test the accuracy of any alluded to evidence supporting
a maximum sentence would have been critical.
          Moreover, it is well-settled and self-evident that an “improper argument may
present a Fourteenth Amendment due process claim if the prosecutor’s argument so
infected the trial with unfairness” as to make the result “a denial of due process.” 
Miller v. State, 741 S.W.2d 382, 391 (Tex. Crim App. 1987) (citing Darden v.
Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986)). Here, the argument
invited speculation as to a “very important” matter which would, if known, support
the maximum punishment. The prosecutor compounded the problem by essentially
asking the jury to ignore the rule of law and “[t]rust me on this.” The argument left
to the imagination of each juror whatever extraneous matters he or she each may have
needed to support their assessment of the maximum sentence. Although most jury
argument error is non-constitutional, here, the improper argument so infected the
punishment phase of the trial with unfairness as to constitute a violation of due
process. Thus, we hold the error in this case was of constitutional magnitude.
          If the record before us reveals constitutional error that is subject to a harmless
error review, we must reverse a judgment of conviction or punishment unless we
determine, beyond a reasonable doubt, that the error did not contribute to the
conviction or punishment. Tex. R. App. P. 44.2(a). We must first, therefore,
determine whether the constitutional error in this case is “subject to harmless error
review.” Id.
          We note that it may seem incongruous for us to determine whether the effect
of an improper jury argument, which we have held violated appellant’s constitutional
rights and caused “incurable” prejudice, was harmful or harmless. “Incurable” is
defined as “[n]ot admitting of remedy, correction, or reformation.”


 However, except
for certain federal constitutional errors labeled by the United States Supreme Court
as ‘structural,’ no error is categorically immune to a harmless error analysis. See
Trahan, 991 S.W.2d at 940.
          Structural defects in the constitution of the trial mechanism defy analysis by
“harmless-error” standards. Arizona v. Fulminante, 499 U.S. 279, 280, 111 S. Ct.
1246, 1249 (1991); Rey v. State, 897 S.W.2d 333, 344 (Tex. Crim. App. 1995). The
entire conduct of the trial from beginning to end is obviously affected by structural
errors such as: the absence of counsel for a criminal defendant, a partial judge, the
unlawful exclusion of members of the defendant’s race from a grand jury, the right
to self-representation at trial, or the right to public trial. Rey, 897 S.W.2d at 344. 
Each of these constitutional deprivations is a similar structural defect affecting the
framework within which the trial proceeds, rather than simply an error in the trial
process itself. Id.
          The error in this case arose during the State’s argument in the punishment
phase of the trial. Although egregious, it was not a structural error, but merely an
error that was committed in the trial process itself. The entire conduct of the trial
from beginning to end was not affected by the error. Thus, a Rule 44.2(a) analysis
is required, and we apply the standard of review for constitutional error as set forth
in Harris v. State, 790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989):
[A] reviewing court in applying the harmless error rule should not focus
upon the propriety of the outcome of the trial. Instead, an appellate
court should be concerned with the integrity of the process leading to the
conviction. Consequently, the court should examine the source of the
error, the nature of the error, whether or to what extent it was
emphasized by the State, and its probable collateral implications. 
Further, the court should consider how much weight a juror would
probably place upon the error. In addition, the Court must also
determine whether declaring the error harmless would encourage the
State to repeat it with impunity. In summary, the reviewing court should
focus not on the weight of the other evidence of guilt, but rather on
whether the error at issue might possibly have prejudiced the jurors’
decision-making; it should ask not whether the jury reached the correct
result, but rather whether the jurors were able properly to apply law to
facts in order to reach a verdict.

Id.; see also Orona v. State, 791 S.W.2d 125, 130 (Tex. Crim. App. 1990).
          In regard to the source and nature of the error, we have already held that the
prosecutor’s argument was egregiously improper and the resulting harm could not
have been cured by an instruction to disregard. The emphasis of the State’s improper
argument, coming during closing argument of the punishment phase of appellant’s
trial, was significant. There can be no doubt but that a juror would place considerable
weight on the prosecutor’s comments, given their source and the clear implication and
meaning of the words used to urge the jurors to impose a maximum sentence for a
“very important” reason. Additionally, the prosecutor’s improper argument made it
especially difficult for the jurors to properly apply the law to the facts in order to
determine a just punishment, based on the fact that he essentially urged them not to
do so. With regard to whether the State would ever repeat such an argument, we can
only trust that no prosecutor would ever do so again.
          Given the flagrant and severely improper nature of the prosecutor’s argument,
the wide range of punishments available to the jury, and the jury’s decision to impose
the maximum sentence, we cannot conclude beyond a reasonable doubt that the error
did not contribute to appellant’s punishment in this case. See Tex. R. App. P. 44.2(a).
          In reaching our holding on this point of error, we must also address two cases
from our sister court. In Ortiz v. State, 999 S.W.2d 600, 604 (Tex. App.—Houston
[14th Dist.] 1999, no pet.), the court of appeals held that a prosecutor’s argument
concerning two pages of a document which were not admitted into evidence was
improper because the argument “invited the jury to speculate on evidence outside the
record,” and the trial court erred in overruling the defendant’s objections to the
argument. Id. at 605. The Ortiz court then reviewed the trial court’s error under a
Rule 44.2(b) analysis, and, citing Mosley, noted that “argument inviting speculation
on evidence outside the record does not constitute constitutional error.” Id. at 605-06.


 The court of appeals concluded the trial court’s error was harmful, reversed the
judgment, and remanded the case for a new trial. Id. at 607.
          In Tucker v. State, 15 S.W.3d 229, 237 (Tex. App.—Houston [14th Dist.] 2000,
pet. ref’d), the court of appeals concluded that a prosecutor’s improper argument
regarding autopsy procedures injected “new and harmful” facts outside the record,
“potentially impacted” the defendant’s claim of self-defense, and was, therefore,
improper. The Tucker court held that the trial court’s instruction to the jury to
disregard the argument had no curative effect, and the trial court erred in denying the
defendant’s motion for mistrial. Id. Interpreting Mosley as “characteriz[ing]
erroneous rulings regarding improper comments during jury argument as
encompassing non-constitutional ‘other error,’” the Tucker court, following Ortiz,
then applied a Rule 44.2(b) analysis and found the error harmless, given the trial
court’s instruction to disregard, the tenuousness of the defendant’s self-defense claim,
and the “minimal emphasis” placed on the improper comment. Id. at 238.
          We respectfully disagree with the Ortiz and Tucker courts’ interpretation of
Mosley, essentially characterizing all “erroneous rulings regarding improper
comments during jury argument as encompassing non-constitutional ‘other error.’” 
Mosley’s narrow holding does not characterize all improper jury argument as non-constitutional “other error” under Rule 44.2(b) but specifically applies only to
argument that “improperly strik[es] at a defendant over the shoulder of counsel.” 983
S.W.2d at 259. Both Ortiz and Tucker give the improper jury argument holding in
Mosley a breadth unintended by the Court of Criminal Appeals.
          Citing Mosely, the Court of Criminal Appeals has subsequently noted, “For
arguments that strike over the shoulders of counsel, we have held that the harm
standard for non-constitutional errors—found in Texas Rule of Appellate Procedure
44.2(b)—applies.” Martinez v. State, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000). 
The court noted generally that comments upon matters outside the record, while
falling outside the areas of permissible jury argument, “do not appear to raise any
unique concerns that would require us to assign constitutional status.” Id. (emphasis
added). However, the court expressly stated:
Mosely’s holding suggests that most comments that fall outside the areas
of permissible argument will be considered error of the non-constitutional variety.

Id. (emphasis added). This is a far cry from a holding that all “argument inviting
speculation on evidence outside the record does not constitute constitutional error.”
See Ortiz, 999 S.W.2d at 605-06.
          In response to appellant’s argument regarding the prosecutor’s improper
statements to the jury, the State argues that the jury was presented with ample other
evidence upon which it could rely in assessing appellant’s punishment.


 However,
as noted above, that is not the standard against which we must measure the harm to
appellant. As the Court of Criminal Appeals observed in Orona:
The task before us is not to determine the harmfulness of the error
simply by examining whether there exists overwhelming evidence to
support appellant’s guilt. . . . It is the effect of the error and not the
existence of overwhelming evidence or the lack thereof that dictates our
judgment.

791 S.W.2d at 130 (citations omitted) (emphasis added). In Orona, decided before
the adoption of Rule 44.2 and pre-Mosley, the court recognized that “overwhelming
evidence of guilt is a variable to be calculated,” and the court concluded, beyond a
reasonable doubt, that a prosecutor’s improper jury argument did not contribute to the
jury’s determination of the defendant’s guilt or punishment. Id. In that case, during
argument, the prosecutor made a “passing reference to defense counsel’s level of
experience and ability as an advocate.” Id. Following defense counsel’s objection,
which the trial court overruled, the State abandoned the argument. Id. The Court of
Criminal Appeals held that, while the trial court should have sustained the objection,
the probable impact, if any, of the error was minimal. Id.
          Here, the prosecutor’s argument went far beyond a mere passing reference or
non-constitutional violation, and the effect of the error was an incurable violation of
due process. The very nature of the argument itself, asking for imposition of the
maximum punishment allowed because of “something important that I [legally]
cannot tell you about,” precludes us from determining beyond a reasonable doubt that
the error did not contribute to the punishment assessed.
          Accordingly, we sustain appellant’s first point of error.
Ineffective Assistance of Counsel
          In his second point of error, appellant argues that he was denied his
constitutional right to effective assistance of counsel


 when his attorney failed to
request an instruction to disregard the State’s jury argument at the punishment phase
of trial, as set out above.
          Because we hold the prejudicial effect of the State’s improper jury argument
was incurable and harmful, we need not address appellant’s second point of error.
Conclusion

          We affirm the judgment of the trial court as to appellant’s conviction, reverse
the judgment of the trial court as to appellant’s punishment, and remand this cause
for a new punishment hearing.




                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Hedges, Jennings, and Price.




En banc consideration was requested. Tex. R. App. P. 41.2(c).

A majority of the Court voted against en banc consideration of the panel’s decision. 

Justice Jennings concurring in the denial of en banc consideration.

Justice Taft, joined by Justice Nuchia, dissenting from the denial of en banc
consideration.

Justice Mirabal not participating.

Publish. Tex. R. App. P. 47.