

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00542-CR
### NO. 02-13-00543-CR
### NO. 02-13-00544-CR
### NO. 02-13-00545-CR

JOSE ALCALA                                                        APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NOS. 1308691D, 1308695D, 1316190D, 1316192D

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Jose Alcala of two counts of aggravated robbery and two counts of burglary of a habitation and, on each count, sentenced him to imprisonment in the Institutional Division of the Texas Department of Criminal

---

[1]*See* Tex. R. App. P. 47.4.

Justice for forty years. In one issue, Appellant contends the trial court erred by denying his motion for mistrial during final arguments. We affirm.

## Procedural Background

In trial court cause numbers 1308691D and 1308695D (appellate court cause numbers 02-13-00542-CR and 02-13-00543-CR), the State indicted appellant for the offenses of aggravated robbery of T.S. and B.B., respectively. *See* Tex. Penal Code Ann. §§ 29.02(a)(2) (robbery), 29.03(a)(2) (using or exhibiting a deadly weapon raises robbery to an aggravated robbery) (West 2011). In trial court cause numbers 1316190D and 1316192D (appellate cause numbers 02-13-00544-CR and 02-13-00545-CR), the State indicted Appellant for the offenses of burglary of a habitation with the complainants being, respectively, B.B. and T.S. *See* Tex. Penal Code Ann. § 30.02(a)(1), (3) (West 2011). The burglary indictments included deadly weapon notices. All four indictments contained the same habitual offender notice of two prior felony convictions.

Before a jury, Appellant pled not guilty to each of the four charges. During trial, Appellant admitted participating in the offenses but maintained he did so under duress. After hearing the evidence, the jury found Appellant guilty of all four offenses. The jury also made a deadly weapon finding in the two burglary cases. During the punishment phase of the trial, Appellant entered a plea of true to the habitual offender paragraph. The jury found the habitual offender paragraph true in accordance with Appellant's plea and assessed his punishment as noted earlier.

2

## Factual Background

T.S. and his girlfriend, B.B., lived together and were both nineteen. They met Appellant in late 2012 in a parking lot of a Wal-Mart when Appellant noticed B.B.'s tattoo and volunteered that he did tattoos. They exchanged phone numbers and later arranged for Appellant to perform tattoo work for them in their apartment. T.S. said he paid Appellant cash for the tattoo work Appellant did on him and B.B. B.B. said T.S. paid for all the supplies needed for the tattoos.

On December 12, 2012, when responding to a knock at the door, T.S. cracked the door open, and Appellant and another male forced their way into T.S. and B.B.'s apartment. Neither man covered his face. B.B. said she recognized Appellant immediately.

Appellant had a taser, and the other man had a gun. Appellant took a number of T.S.'s and B.B.'s belongings, wrapped them up in a blanket, and placed the blanket in a pillowcase. Appellant then tied their hands and feet together with zip ties. B.B. said Appellant threatened to kill them if they called the police.

T.S. thought Appellant was "kind of" the one in charge, because Appellant was the one getting everything, Appellant was the one who tied them up, and Appellant was the one who knew where they lived. T.S. acknowledged that was just an assumption and that he really did not know who was in charge. T.S. said the other man, Edward Flores, had the gun and, without pointing the gun directly at Appellant, Flores pointed it somewhat in the same direction as Appellant. T.S.

3

acknowledged Appellant told Flores, "Don't do it." T.S. thought Appellant was telling Flores not to shoot them.

T.S. said he had agreed to sell marijuana to Appellant but did not think he ever actually had sold any to him. Because he was selling drugs and, therefore, afraid to call the police, T.S. said he called his father before calling the police. T.S. said ultimately it was his stepmother who called the police. So T.S. could testify, the State granted T.S. immunity.

Officer Michael Tyler testified he was dispatched to the apartment on December 12, 2012, where he met T.S., B.B., who was crying, and T.S.'s father, who was holding the taser that had been used during the offense. Officer Tyler took possession of the taser. Officer Tyler said both T.S.'s and B.B.'s wrists and ankles had marks consistent with zip ties. Officer Tyler further testified that the smell of marijuana in their apartment hit him "like a brick wall."

Appellant testified and admitted participating in the burglaries and robberies. Appellant maintained, however, that the idea was Flores's and that Flores forced him to participate. Appellant said he just wanted to collect the money T.S. owed him for the tattoo work he had done earlier because he was short of money to pay the rent. Appellant acknowledged he understood that just because someone owed him money, he could not steal from them. Appellant stressed that he knew Flores had a gun at all times and that Flores had threatened to shoot or kill him. Once Flores had him at gun point, Appellant said he had no choice. Appellant testified his choices were going along with Flores or

4

getting shot by Flores. Appellant described Flores as a friend, but Appellant said Flores turned on him when he resisted the idea of robbing T.S. and B.B. Appellant later clarified that Flores never threatened to kill him, but that Appellant felt Flores would have shot or killed him on "the spur of the moment." Appellant insisted he was forced to commit the robbery.

Appellant said Flores gave him the taser. Appellant admitted leaving the taser behind. Appellant said he did not want to use the taser, so when he was gathering up other stuff, he placed it to the side.

Appellant said he told Flores, "Don't do it." Appellant said he did not do violent crimes, he hated guns, and he did not want anyone getting shot or losing his or her life. Appellant admitted being scared and said robbery was not something he normally would have done.

Appellant acknowledged two days later he stole a car and both he and Flores drove it. Appellant agreed no one forced him to steal the car. Appellant acknowledged he did not try to conceal his identity from the car dealership. Appellant admitted he had participated in four or five "beer runs," which involved stealing beer from stores and reselling it. Appellant admitted he tried to steal TVs from Wal-Mart while making no attempt to disguise himself.

### Appellant's Point of Error

During final arguments, the following occurred:

[Prosecutor]: And in reaching that decision this charge also tells you something I think is very important, is that you are the sole judges of the credibility of the witnesses. It's your decision about who you are

5

going to believe and what you are going to believe. You heard from several witnesses. You heard what they told you. And they were truthful with you from the State's side. Okay. [T.S.] and [B.B.]

[Defense Counsel]: I object to her characterization of the truthfulness based upon her opinion. It's for the jury to decide.

THE COURT: Sustained.

[Defense Counsel]: And instruct the jury, Your Honor.

THE COURT: Instruct the jury to disregard that last comment.

[Defense Counsel]: Request a mistrial.

THE COURT: Denied.

[Prosecutor]: [B.B.] and [T.S.] told you the truth. Officer Tyler told you the truth.

[Defense Counsel]: Objection, Your Honor, same objection.

THE COURT: Sustained.

[Defense Counsel]: Instruct the jury, please.

THE COURT: Disregard the last argument of the prosecutor.

[Defense Counsel]: Request a mistrial.

THE COURT: Denied.

In a single point of error, Appellant contends the trial court erred by not granting his motion for mistrial due to the State's improper argument. Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App.), *cert. denied*, 531 U.S. 850 (2000).

6

Appellant argues it is improper for a prosecutor to bolster a victim's testimony by injecting the prosecutor's personal, unsworn opinion about the victim's honesty and truthfulness. *See Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981) (op. on second motion reh'g); *Flores v. State*, 778 S.W.2d 526, 528 (Tex. App.—Corpus Christi 1989, no pet.). The State concedes, albeit grudgingly, that the prosecutor's argument was improper.[2]

Appellant maintains there are three factors to consider when assessing the impact of the harm after an improper jury argument: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and, (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *See Threadgill v. State*, 146 S.W.3d 654, 666–67 (Tex. Crim. App. 2004); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999). Appellate courts review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). Mistrial is appropriate for only highly prejudicial and incurable errors. *Id.* Appellant contends the trial court should have granted a mistrial after the first

---

[2]In its brief, the State argues only that any error was harmless, stating: "It would appear that this jury argument was moderately incorrect. It is axiomatic that a prosecutor has a duty to keep his view of the evidence to himself."

violation and certainly after the second violation. Appellant contends the trial court's failure to grant a mistrial constitutes an abuse of discretion.

Regarding the severity of the misconduct, Appellant emphasizes that the prosecutor vouched for the witnesses' credibility not once but twice. Appellant contends repeating the misconduct immediately after the trial court corrected the identical error added to the severity of the prosecutor's misconduct. We agree the record shows the prosecutor vouched for the witnesses' credibility twice, and we agree the second time was immediately after the trial court had sustained Appellant's objection and instructed the jury to disregard the prosecutor's comments, which could hardly be characterized as a mitigating factor and could fairly be characterized as an exacerbating one.

An improper jury argument requires reversal only if it is so inflammatory that its prejudicial effect cannot be reasonably removed from the minds of the jurors by a trial court's instruction to disregard. *Tucker v. State*, 15 S.W.3d 229, 237 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *see Rudd v. State*, 616 S.W.2d 623, 624 (Tex. Crim. App. [Panel Op.] 1981) (sustaining objection and instructing jury to disregard removes any harm); *Thompson v. State*, 612 S.W.2d 925, 928–29 (Tex. Crim. App. [Panel Op.] 1981) (sustaining objection and instructing jury to disregard renders complained-of statements harmless). An instruction to disregard cures almost any improper argument. *Garcia v. State*, 943 S.W.2d 215, 217 (Tex. App.—Fort Worth 1997, no pet.). When determining the curative effect of an instruction to disregard, the question is whether the

argument was extreme or manifestly improper, whether it injected new and harmful facts into the case, or whether it violated a mandatory statutory provision and was thus so inflammatory that an instruction to disregard could not cure its prejudicial effect. *Id.*

Appellant contends the curative measures were insufficient to overcome the harm. He argues that when the prosecutor immediately returned to the same improper argument, the trial court should have taken additional curative measures in the form of an admonishment to the prosecutor or a more forceful and detailed instruction to the jury. Not having more forceful admonishments or instructions with which to work, the State has, not surprisingly, taken the position the instructions to disregard, such as they were, were nevertheless sufficient and effective.

Regarding the certainty of conviction absent the misconduct, Appellant contends the credibility of the witnesses was critical to the case. Appellant maintains he would have prevailed on his duress defense but for the prosecutor having improperly bolstered the witnesses' credibility. Appellant emphasizes that the State granted T.S., who sold marijuana, immunity for his testimony. The State responds that absent the misconduct, the certainty of conviction weighed heavily in its favor. The State points out that even without T.S.'s testimony, there was still B.B.'s testimony. Appellant admitted he heard B.B.'s testimony and said she testified truthfully. The State also relies on Appellant's testimony; Appellant admitted committing the offenses but claimed he committed them under duress.

9

The prosecutor's argument was articulated improperly, but the thrust of her argument appears to have been that the complainants' testimony was undisputed and, therefore, could be believed without the prosecutor belaboring the point with argument. After the above-quoted exchange, the prosecutor directly addressed Appellant's duress defense and attacked Appellant's credibility. Inasmuch as Appellant admitted committing the offenses but maintained he did so only under duress, we conclude the critical witnesses were not the complainants or the police officers; rather, the critical witness was Appellant himself.

Appellant's credibility had significant issues. Appellant said he had been to prison on three separate occasions, twice for burglary of a habitation and once for possession of a controlled substance in a correctional facility. Appellant said that in 2002 he was also charged for and convicted of burglary of a vehicle and evading arrest. In addition to the present four offenses, Appellant acknowledged he was also accused of (1) theft of property of $50 to $500 that allegedly occurred on or about October 21, 2012; (2) theft of property of $500 to $1,500 that allegedly occurred on or about December 3, 2012; (3) another theft of property of $50 to $500 that allegedly occurred on or about December 3, 2012; and (4) theft of $1,500 to $20,000 that allegedly occurred on or about December 14, 2012, which involved the theft of a car from the Yate's Auto Dealership. There were also charges of resisting arrest and evading arrest from December 17, 2012.

Regarding the theft of the vehicle on December 14, 2012, it occurred at a dealership where the salespeople knew Appellant because Appellant had, shortly before that, taken one of his girlfriends to the same dealership to help her buy a car. Flores and Flores's brother were the ones who took Appellant to the dealership. Flores himself was later found in the car Appellant stole. As the prosecutor noted during her final arguments, Appellant's duress contention made no sense when, only two days later, Appellant and Flores were still together and where Flores was ostensibly helping Appellant commit another felony.

We hold the magnitude of the prejudicial effect, even after the prosecutor repeated the misconduct, was not so great that the trial court's instructions to disregard were ineffective. *See Threadgill*, 146 S.W.3d at 666–67. We hold that the strength of the State's evidence was such that the prosecutor's improper argument, even when repeated after Appellant's objection was sustained and the jury instructed to disregard, did not affect the certainty of conviction. *See id.* In the context of the record as a whole, the misconduct was not so highly prejudicial that it was incurable. *See Wood*, 18 S.W.3d at 648; *Flores*, 778 S.W.2d at 528 ("In the instant case, we construe the prosecutor's argument, given the context in which the credibility of the complainant was being addressed, as not to be so extreme as to require reversal."). We hold the trial court did not abuse its discretion by denying Appellant's motions for mistrial. We overrule Appellant's sole point of error. *See Wood*, 18 S.W.3d at 648.

## Conclusion

Having overruled Appellant's point of error, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 4, 2014