**Affirmed and Opinion filed August 12, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00390-CR

---

### CASMIR IRIELLE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 23rd District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 65651**

---

## O P I N I O N

A jury acquitted appellant Casmir Irielle of aggravated sexual assault but convicted him of improper sexual activity with a person in custody, a state jail felony. *See* Tex. Penal Code Ann. § 39.04. Appellant challenges his conviction in three issues, arguing that the trial court erred by (1) instructing the jury on two or more offenses in the disjunctive, which violated appellant's right to a unanimous verdict; (2) omitting relevant portions of a Rule 404(b) instruction regarding

extraneous offenses; and (3) overruling appellant's motion for a mistrial when the prosecutor made an argument outside the record during closing argument.

We hold that the jury charge improperly allowed for a non-unanimous verdict, but appellant did not suffer egregious harm from the unobjected-to charge. The trial court did not err regarding the Rule 404(b) instruction or by overruling appellant's motion for a mistrial.

## I. BACKGROUND

Ethan[1] is a prisoner at the Mac Stringfellow prison serving a thirty-year sentence for sexually assaulting a child. Appellant was a guard at the prison and worked the night shift as the floor officer, where he stayed in the room that the prisoners slept in small cubicles.

## A. Ethan's Testimony About Aggravated Sexual Assault

Ethan testified that near the end of August 2010, appellant called Ethan over to a crash gate and asked Ethan if he was interested in appellant because appellant was interested in Ethan. That night after rack time—when the prisoners went to their beds—appellant came to Ethan's cubicle and told Ethan to expose his penis. Appellant told Ethan that Ethan would not get in trouble if he wanted to masturbate. Ethan told appellant that he was sleeping, and he covered his head.

At about 1:00 a.m. on September 22, appellant returned to Ethan's cubicle, masturbated, ejaculated on the floor, and then poured water on the floor and rubbed it with his shoe. After rack time on September 26, appellant approached Ethan's cubicle and told Ethan that Ethan would feel better if Ethan masturbated and that Ethan would not get in trouble for masturbating. Appellant was masturbating, and his penis was erect. He tried to get Ethan to perform oral sex. Ethan testified that

---

[1] We use a pseudonym to protect the privacy of the complainant.

appellant "walked up to my desk area and tried to put his penis in my mouth and at the same time he ejaculated causing the semen to go, like on my shoulder and face area." Ethan wiped up the semen with a washcloth and hid it.

Ethan testified that on October 6, Ethan told appellant that Ethan was going to tell the other guards about appellant's conduct. Ethan testified that appellant threatened to tell the other prisoners that Ethan was in prison for sexually assaulting a child, which Ethan said made him afraid for his life because "it's like one of the worst crimes that they look down on, and they will beat you." Later that night, appellant again came to Ethan's cubicle and was masturbating. Ethan testified that he performed oral sex on appellant, "[a]nd then I pulled away—or at least I tried to pull away. I tried to stop, and he grabbed my—my head and back of my neck and he ejaculated in my mouth." Ethan testified that appellant's penis penetrated Ethan's mouth. Ethan spit out the semen, vomited, and then wiped up the semen with tissues and a washcloth and hid them.

## B.     Ethan's Outcry and the Evidence of "Touching"

Three days later, Ethan briefly told another correctional officer, Whitley Murdock, about his interactions with appellant. Murdock wrote in an inter-office communication to the lieutenant that, among other things, appellant "grabbed [Ethan's] penis." She testified at trial that Ethan said appellant grabbed Ethan's penis, but she testified later, "I do remember him saying about Officer Irielle going to grab his—now, it could have been he was trying to reach. I might have left out a word or two. Trying to reach and grab it, but I know he did state about grabbing."[2] At trial, Ethan denied stating that appellant grabbed Ethan's penis; he testified unequivocally that appellant never touched Ethan's penis and that appellant never touched Ethan during the September 26 incident.

---

[2] Murdock testified several more times that Ethan may have said "tried" to grab his penis.

3

## C.     Investigation and DNA Evidence

Police Officer Curtis Layman from the Texas Department of Criminal Justice, Office of the Inspector General, was called to begin an investigation. Ethan gave an oral and written statement to Layman that day and also gave Layman the tissues and washcloths Ethan used to collect appellant's semen.[3]

Tanya Dean testified that she was a forensic DNA specialist at the Texas Department of Public Safety Regional Crime Lab in Houston. She tested the tissues and washcloths and compared fluid samples from those items to buccal swabs from appellant and Ethan. She confirmed with scientific certainty that sperm from two of the items contained appellant's DNA. She also opined that Ethan's DNA found on the samples could have been from his saliva.

## D.     Appellant's Admission About Oral Sex

Appellant was indicted for one count of aggravated sexual assault and one count of improper sexual activity with a person in custody. Layman interrogated appellant after his arrest. Appellant claimed that Ethan unzipped appellant's pants and began sucking appellant's penis for up to two minutes. Appellant acknowledged that he ejaculated in Ethan's mouth. Appellant acknowledged that it had "happened the same way" about a week before. Appellant said the "first time was the same way," so Ethan "jumped out again just as he did the second time and unzipped me." Appellant confirmed that he ejaculated the first time on the floor, and Ethan cleaned it up with tissues. Appellant confirmed that Ethan sucked

---

[3] Ethan's statements were generally consistent with his testimony at trial, except Ethan did not say he performed oral sex on appellant. He said appellant's penis entered his mouth and touched his tongue; the written statement was that appellant "tried to force his penis in my mouth as he ejaculated, causing the tip area of his penis to enter my mouth along with his semin [sic]." Ethan did not mention appellant putting his hands on Ethan's head or neck.

4

appellant's penis "only the two times" for one to two minutes. Appellant denied ever touching Ethan's penis.[4]

## E.    Conviction

At trial, the jury acquitted appellant of aggravated sexual assault and the lesser included offense of sexual assault, but the jury found him guilty of improper sexual activity with a prisoner. The jury assessed punishment at one year's confinement.

## II.    JURY UNANIMITY

In his first issue, appellant contends the trial court erred by charging the jury on two or more separate offenses of improper sexual activity with a person in custody, and this unobjected-to charge error caused egregious harm to appellant. The State responds that this crime is a "circumstances surrounding the conduct" crime, which means unanimity would not be required for the various statutory manner and means of committing the offense. The parties do not cite any cases directly addressing the level of unanimity required for Section 39.04(a)(2), and this issue appears to be one of first impression.

First, we review the penal statute at issue and the charge in this case. Second, we review the law of jury unanimity generally. Third, we hold that the jury charge in this case allowed for a non-unanimous verdict because improper sexual activity with a person in custody is a "nature of conduct" crime, and the jury must unanimously agree about which of several statutorily defined acts the defendant committed. Because the charge in this case allowed for a non-unanimous verdict, the trial court erred. Ultimately, however, we conclude that appellant did not suffer egregious harm based on a review of the entire record.

---

[4] At the time, appellant did not know that it was illegal for Ethan to suck appellant's penis.

5

**A.** **Statute and Charge for Improper Sexual Activity with a Person in Custody**

Section 39.04(a)(2) of the Penal Code makes it an offense if an employee of a correctional facility intentionally "engages in sexual contact, sexual intercourse, or deviate sexual intercourse with an individual in custody." Tex. Penal Code Ann. § 39.04(a)(2). For purposes of this statute, "'[s]exual contact,' 'sexual intercourse,' and 'deviate sexual intercourse' have the same meanings as assigned by Section 21.01." *Id.* § 39.04(e)(3). Section 21.01, found in the "Sexual Offenses" chapter of the Penal Code, defines these terms as follows:

(1)  "Deviate sexual intercourse" means:

    (A)  any contact between any part of the genitals of one person and the mouth or anus of another person; or

    (B)  the penetration of the genitals or the anus of another person with an object.

(2)  "Sexual contact" means, except as provided by Section 21.11 [indecency with a child], any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person.

(3)  "Sexual intercourse" means any penetration of the female sex organ by the male sex organ.

*Id.* § 21.01(1)–(3).

Here, the jury charge submitted the three statutorily defined methods of committing an offense in the disjunctive:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 6th day of October, 2010, in Brazoria County, Texas, the defendant CASMIR IRIELLE, did then and there while an employee at a correctional facility, to-wit: The Mac Stringfellow Unit of the Texas Department of Criminal Justice, intentionally engage in sexual contact, sexual intercourse, or deviate sexual intercourse with [ETHAN], a person in custody; then you will find the defendant guilty

of Improper Sexual Activity with a Person in Custody as charged in Count Two of the indictment.

The charge defined the three methods as follows:

"Deviate sexual intercourse" means any contact between any part of the genitals of one person and the mouth or anus of another person.

"Sexual Contact" means any touching of the anus or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person.

"Sexual intercourse" means any penetration of the female sex organ by the male sex organ.

## B.    Jury Unanimity Law Generally

"A jury must unanimously agree about the occurrence of a single criminal offense, but they need not be unanimous about the specific manner and means of how that offense was committed." *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). Determining whether a statute creates multiple offenses (which requires unanimity as to one offense) or merely a single offense that may be committed by one of multiple manner and means (which do not require unanimity) "is a function of legislative intent, and in examining statutory language for legislative intent, we inquire into the 'gravamen' of the offense." *Jourdan v. State*, 428 S.W.3d 86, 95–96 (Tex. Crim. App. 2014).

The Court of Criminal Appeals has clarified that there are three general categories of criminal offenses: result of conduct, nature of conduct, and circumstances of conduct. *Young*, 341 S.W.3d at 423. Result-of-conduct offenses "concern the product of certain conduct." *Id.* For example, injury to a child is a result-of-conduct offense because the focus or gravamen of the offense is "the resulting injury that the conduct caused." *Stuhler v. State*, 218 S.W.3d 706, 718 (Tex. Crim. App. 2007). For nature-of-conduct offenses, "it is the act or conduct

7

that is punished." *Young*, 341 S.W.3d at 423. "The most common illustration of this second category is that of many sex offenses, where the act itself is the gravamen of the offense." *Id.* Finally, circumstances-of-conduct offenses "prohibit otherwise innocent behavior that becomes criminal only under specific circumstances." *Id.* The "focus is on the particular circumstances that exist rather than the discrete, and perhaps different, acts that the defendant might commit under those circumstances." *Id.* at 424. For example, in the failure to stop and render aid statute, the focus is the existence of an automobile accident. *Id.*

One helpful tool for determining the gravamen of the offense is the "eighth-grade grammar test." *See Jourdan*, 428 S.W.3d at 96; *see also Pizzo v. State*, 235 S.W.3d 711, 722 (Tex. Crim. App. 2007) (Price, J., concurring) (noting that the test "will not necessarily work invariably, in every scenario, to accurately identify legislative intent"); *Stuhler*, 218 S.W.3d at 718 (noting that the test is "a general rule of thumb for making this determination of legislative intent"). Under this test,

> we must return to eighth-grade grammar to determine what elements the jury must unanimously find beyond a reasonable doubt. At a minimum, these are: the subject (the defendant); the main verb; and the direct object if the main verb requires a direct object (i.e., the offense is a result oriented crime).

*Stuhler*, 218 S.W.3d at 718.

Generally, adverbial phrases are not "elemental" for jury unanimity purposes. *Jourdan*, 428 S.W.3d at 96. However, an adverbial phrase may "provide a level of specificity that arguably serves to define discretely actionable units of prosecution even within the same statutory subsection." *Id.*

For example, in *Pizzo v. State*, the indecency with a child statute provided that a person commits an offense if he "engages in sexual contact with the child," and "sexual contact" was defined in Section 21.01(2) of the Penal Code—the same

8

definition applicable to appellant's case. *See Pizzo*, 235 S.W.3d at 715.[5] The court reasoned that the preposition "by" was implied in the statutory definition and therefore rephrased the statute as follows: a person commits an offense if he "engages in sexual contact with the child by any touching of the anus, breast, or any part of the genitals of another person with the intent to arouse or gratify the sexual desire of any person." *Id.* at 717 (alterations and quotation marks omitted). The court reasoned that this was a "nature of the conduct" crime in part because "the conduct is the focus of the definition of sexual contact." *Id.* A person would commit an offense either by touching the anus, touching the breast, or touching the genitals with the requisite intent for each touching: "Each one of these acts represents a different offense." *Id.* Because the trial court submitted the offenses in the disjunctive—allowing for a conviction if the defendant touched the child's breast *or* genitals—the instruction allowed for a non-unanimous verdict. *See id.* at 719.

In *Pizzo*, the evidence showed that the defendant touched the child's breast and genitals during the same incident. *Id.* at 716. But the Court of Criminal Appeals has also explained that "non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Cosio v. State*, 353 S.W.3d 766, 772 (Tex. Crim. App. 2011). "Each of the multiple incidents individually establishes a different offense." *Id.*

---

[5] The statute was amended shortly after the defendant's conduct in *Pizzo* to provide for a different definition of "sexual contact" specific to the indecency with a child statute. *See Pizzo*, 235 S.W.3d at 719 & n.1 (Price, J., concurring) (citing Act of May 23, 2001, 77th Leg. R.S., ch. 739, § 1, 2001 Tex. Gen. Laws 1463). The courts used the old definition of "sexual contact" found in Section 21.01(2), which is the same definition that applies here for appellant's conviction of improper sexual activity with a person in custody. *See id.* at 715 (majority op.).

9

## C. Jury Unanimity for Improper Sexual Activity with a Person in Custody

The State contends that "sexual contact, sexual intercourse, and deviate sexual intercourse are alternative methods of committing this one, 'circumstances of conduct' crime." The State reasons that none of this conduct is "per se illegal," and the conduct becomes illegal only when it is committed under a circumstance "[s]uch as by an employee of a correctional facility aimed at a person in custody."

The State's argument is unpersuasive in light of *Pizzo*, which held that the nature of the conduct of indecency with a child was the gravamen of the offense, and each act proscribed in the definition of "sexual contact" created a separate offense for which unanimity was required. *See* 235 S.W.3d at 719; *id.* at 720 (Price, J., concurring). Similar to the statute criminalizing sexual activity with a person in custody, the indecency with a child statute criminalizes conduct that would ordinarily be legal (sexual contact) but for the status of the victim as a child. Section 39.04(a)(2) criminalizes the same conduct based on the status of the victim as a person in custody and the status of the perpetrator as an employee of a correctional facility.

Consistent with *Pizzo*, we hold that Section 39.04(a)(2) encompasses a variety of different nature-of-conduct offenses because the definition of "sexual contact" is considered elemental. There is no reason to treat the definitions of "deviate sexual intercourse" and "sexual intercourse" differently. Thus, an offense is committed under Section 39.04(a)(2) if an employee of a correctional facility, with a person in custody, intentionally:

> (1)    engages in sexual contact by touching the anus of another person with intent to arouse or gratify the sexual desire of any person;

(2)     engages in sexual contact by touching the breast of another person with intent to arouse or gratify the sexual desire of any person;

(3)     engages in sexual contact by touching any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person;

(4)     engages in sexual intercourse by penetrating the female sex organ by the male sex organ;

(5)     engages in deviate sexual intercourse by engaging in any contact between any part of the genitals of one person and the mouth of another person;

(6)     engages in deviate sexual intercourse by engaging in any contact between any part of the genitals of one person and the anus of another person;

(7)     engages in deviate sexual intercourse by penetrating the genitals of another person with an object; or

(8)     engages in deviate sexual intercourse by penetrating the anus of another person with an object.

*See* Tex. Penal Code Ann. § 21.01(1)–(3); *id.* § 39.04(a)(2), (e)(3). Each of these offenses is distinct, and the jury must unanimously agree about the offense that the defendant committed. *See Pizzo*, 235 S.W.3d at 719 (majority op.) (each of the different touchings in the definition of "sexual contact" represents a different offense of indecency with a child, for which unanimity is required).

Here, the jury charge did not include the complete definitions for "deviate sexual intercourse" and "sexual contact."[6] However, by listing "sexual contact," "sexual intercourse," and "deviate sexual intercourse" in the disjunctive, the charge grouped five distinct offenses:

---

[6] The charge omitted the reference to "breast" for sexual contact and digital penetration for deviate sexual intercourse.

11

(1)    engages in sexual contact by touching the anus of another person with intent to arouse or gratify the sexual desire of any person;

(2)    engages in sexual contact by touching any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person;

(3)    engages in sexual intercourse by penetrating the female sex organ by the male sex organ;

(4)    engages in deviate sexual intercourse by engaging in any contact between any part of the genitals of one person and the mouth of another person; or

(5)    engages in deviate sexual intercourse by engaging in any contact between any part of the genitals of one person and the anus of another person.

The jury should have been required to find unanimously beyond a reasonable doubt that appellant committed one of these five offenses. Because the charge did not require unanimity, the trial court erred by submitting it.

## D.    No Egregious Harm

In a case involving unobjected-to jury unanimity charge error, the Court of Criminal Appeals has explained:

> Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. In examining the record to determine whether jury-charge error is egregious, the reviewing court should consider the entirety of the jury charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole.

*Jourdan*, 428 S.W.3d at 97–98 (quotation omitted).

Appellant contends he suffered egregious harm because the record does not allow for a determination that the jury was, in fact, unanimous in finding appellant

12

guilty of one specific offense. *See Ngo v. State*, 175 S.W.3d 738, 752 (Tex. Crim. App. 2005) (finding egregious harm when the Court of Criminal Appeals could not "determine that the jury was, in fact, unanimous in finding" the defendant guilty of one specific offense; but noting that the trial judge and prosecutor specifically told the jury it did not need to be unanimous). In particular, appellant contends, "Some jurors could have relied on sexual contact on September 26 and some could have relied on sexual contact on October 6. Some could have relied on Appellant's commission of committed [sic] deviate sexual intercourse on either of those two dates or on some specified date."

Appellant does not contend, and the record does not reveal, that the trial court or the parties emphasized that jury unanimity was not required, which is usually an "important consideration in any analysis of egregious harm." *Jourdan*, 428 S.W.3d at 98 (finding no egregious harm even though the State repeatedly insisted unanimity was not required). We must also consider "the likelihood that the jury would in fact have reached a non-unanimous verdict on the facts of the particular case." *Id.* We may affirm if "the likelihood of non-unanimity is exceedingly remote." *Id.*

First, we begin by reviewing the offense listed among the five above that appellant does not contend could have been found by the jury: number three, sexual intercourse by penetrating the female sex organ. There is no evidence in the record to support this offense. The State, during closing argument, specifically told the jury to ignore this aspect of the jury charge: "Obviously, sexual intercourse doesn't apply because you'll see the definition that talked about between a man and a woman." It is highly unlikely any juror believed appellant engaged in sexual intercourse, as defined, with Ethan.

13

Next, we review two additional offenses that have absolutely no record support: number one, sexual contact by touching the anus; and number five, deviate sexual intercourse by engaging in any contact between any part of one person's genitals and another person's anus. There was no evidence of any touching or contact of any person's anus, so it is highly unlikely any juror believed appellant engaged in either of these offenses.

Now we evaluate the two remaining offenses appellant suggests led to a non-unanimous verdict: number two, sexual contact by touching any part of the genitals of another person; and number four, deviate sexual intercourse by engaging in contact between any part of the genitals of one person and the mouth of another person.

There is very little evidence that appellant touched Ethan's genitals. Ethan testified unequivocally that appellant never touched Ethan's penis and never even touched Ethan at all on September 26. During the recorded interview with Layman, appellant denied touching Ethan's penis. So, the only two eyewitnesses—the complainant and the defendant—both contended that there was never any touching of Ethan's genitals. The only person who testified that appellant "grabbed" Ethan's penis was Officer Murdock, and she largely recanted her testimony by testifying repeatedly that Ethan could have said "tried to grab" his penis. For the remainder of the trial, defense counsel repeatedly used the phrase "tried to grab," and neither defense counsel nor the State argued that appellant grabbed or touched Ethan's penis. In closing, after the prosecutor read aloud the three general methods of improper sexual activity—contact, intercourse, and deviate intercourse—the prosecutor argued that "we're talking about the third option there, deviate sexual intercourse." After defining "deviate sexual intercourse," the prosecutor said, "And, of course, that's what we're talking about

14

here because we've got contact between the genitals of the defendant and the mouth of the victim." The prosecutor never urged the jury to find appellant guilty of a "sexual contact" offense involving the touching of Ethan's penis.[7] Accordingly, it is highly unlikely any juror believed appellant engaged in sexual contact by touching Ethan's genitals. *Cf. id.* at 98–99 (finding no egregious harm even though "there was some evidentiary basis from which the jurors might have disagreed about whether the appellant penetrated [the complainant's] vagina with his penis, his finger, neither his penis nor his finger, or both his penis and his finger" based on conflicts in the testimony between the complainant, her physician, and an interpreter).

The remainder of the evidence and arguments at trial concerned the fourth possible offense identified above: deviate sexual intercourse by engaging in contact between any part of the genitals of one person and the mouth of another person. Ethan testified that appellant put his penis in Ethan's mouth, but only on one occasion—October 6. Appellant, on the other hand, said during his recorded statement that he received oral sex from Ethan on two separate occasions about a week apart. If the jury believed Ethan, there is no unanimity problem because there was only one offense. If the jury believed appellant, there is no unanimity problem because all the jurors would have agreed that appellant engaged in deviate sexual intercourse on both occasions. And if some jurors believed Ethan while others believed appellant, there is no unanimity problem because all of the jurors would have agreed that appellant engaged in deviate sexual intercourse on at least

_____

[7] On appeal, appellant contends that the prosecutor "argued 'sexual contact.'" However, it is clear from the record that the prosecutor merely used the word "contact" in place of the word "activity" when referring to the title of the statute as a whole: "If a guard has sex with an inmate, that is improper sexual contact with a person in custody. I think no matter how you cut this thing, the defendant is guilty of Count Two, improper sexual contact with a person in custody." This isolated reference to "contact" in closing argument does not suggest that any jurors believed the statutorily defined "sexual contact" actually occurred.

one common occasion on October 6. So, under any view of the evidence, the likelihood of non-unanimity is exceedingly remote—the jury would have unanimously found that appellant committed the charged offense on or about October 6. *Cf. id.* at 99 (finding no egregious harm under the facts of the case because any juror who voted to convict under the theory that the defendant "penetrated [the complainant's] vagina with his finger must, at a minimum, have agreed that the appellant also contacted [the complainant]'s sexual organ with his penis").

Considering that the parties and trial court did not emphasize the unanimity aspect during trial and that the evidence and arguments of counsel would have made the likelihood of non-unanimity exceedingly remote, we cannot conclude that appellant was denied his substantial right to a unanimous jury verdict. Accordingly, he did not suffer egregious harm.

Appellant's first issue is overruled.

## III. RULE 404(B) CHARGE

The trial court submitted a Texas Rule of Evidence 404(b) charge that defined "extraneous offenses" as "criminal acts other than the offense alleged against [appellant] in the indictment in this case."[8] Appellant did not object at

---

[8] The full charge read as follows:

> You are instructed that there is testimony before you in this case that the defendant committed criminal acts other than the offense alleged against him in the indictment in this case. These are called extraneous offenses.

> You cannot consider testimony of extraneous offenses for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed any such extraneous offense. Even then you may only consider the same in determining the motive, intent, preparation, plan or knowledge of the defendant; or as the same may relate to the rebuttal of a defensive theory, if any, in connection with the offense alleged against the defendant in the indictment in this case and for no other purpose.

16

trial, but in his second issue on appeal, he contends the trial court erred by restricting the Rule 404(b) charge to "criminal acts." Appellant argues that the charge "failed to limit the use of evidence showing 'other wrongs or acts.'"[9] Appellant contends, therefore, the jury charge improperly allowed the jury to use evidence of the following "other wrong or acts" as evidence of character conformity:

(1) appellant called Ethan to the crash gate and propositioned him;

(2) appellant asked to see Ethan's penis and asked Ethan to masturbate;

(3) appellant was rubbing himself on September 22;

(4) appellant pulled out his penis and ejaculated on the floor, poured water on the floor, scrubbed it with his foot, and left the dormitory.

The State contends that appellant's failure to request a limiting instruction is fatal to this point of error. We conclude that the State is correct, but not because appellant failed to preserve error. Rather, we hold that there was no error in the jury charge because the "other wrongs or acts" evidence was admissible for all purposes—including character conformity—when appellant failed to request a limiting instruction at the time the "other wrongs or acts" evidence was admitted.

A trial court has a duty to deliver to the jury "a written charge distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14. Rule 105(a) of the Texas Rules of Evidence provides, "When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's

---

[9] *See* Tex. R. Evid. 404(b) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

17

action in admitting such evidence without limitation shall not be a ground for complaint on appeal." Tex. R. Evid. 105(a). When a defendant fails to request a limiting instruction under Rule 105(a) at the time evidence is admitted, then Rule 404(b) never becomes "law applicable to the case," and the trial court "has no obligation to limit the use of that evidence later in the jury charge." *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007). "Once evidence has been admitted without a limiting instruction, it is part of the general evidence and may be used for all purposes." *Id.* In *Delgado*, the defendant failed to request a limiting instruction at the time the evidence was admitted. *Id.* at 253. The Court of Criminal Appeals held that because the "trial judge had no duty to give **any** limiting instruction concerning the use of an extraneous offense in the guilt-phase jury charge, it naturally follows that he had no duty to instruct the jury on the burden of proof concerning an extraneous offense." *Id.* at 254.

Our review of the record confirms that when Ethan testified about the four alleged "other wrongs or acts," appellant did not request a limiting instruction. Accordingly, Rule 404(b) never became law applicable to the case; the evidence was admissible for all purposes; and the trial court had no duty to include a Rule 404(b) limiting instruction in the charge. Because the trial court had no duty to give **any** limiting instruction concerning extraneous offenses in the jury charge, it naturally follows that the court had no duty to limit the jury's use of "other wrongs or acts" evidence. *Cf. id.* The trial court did not err.

Appellant's second issue is overruled.

## IV. DENIAL OF REQUEST FOR MISTRIAL

In his third issue, appellant contends the trial court erred by refusing his request for a mistrial when the prosecutor, Roger White, made an improper argument during closing of the guilt-phase of the trial. White argued:

> The defendant's story—you know, he wasn't telling anybody the truth and then they confronted him, "What about this DNA? How did your semen get inside this unit?" Ladies and gentlemen, I worked at a prison for three years. You couldn't have found a bit of my semen anywhere in that unit.

Appellant objected, and the trial court sustained, telling White, "Stay in the record." When appellant moved for a mistrial because White's statement was "clearly outside the record," the court denied the request and instructed the jury to "disregard the statement of counsel dealing with his employment at TDC."

The State contends first that the argument was proper even though it was "outside the record" because it was "common knowledge" that semen is not found in the workplace. The State also contends that the trial court did not abuse its discretion in denying a mistrial even if the argument was improper.

Initially, we reject the State's contention that White's argument was "common knowledge." Some examples of "common knowledge" facts include: (1) "[t]here is always the possibility that there might be a jail break"; (2) "being an informer is a hazardous profession"; (3) "some marihuana finds its way into the possession of high school children"; (4) "whiskey is an intoxicating liquor"; and (5) "a bullet is deflected from a straight course by striking an object." *Sawyers v. State*, 724 S.W.2d 24, 37 (Tex. Crim. App. 1986) (collecting cases). Rather, White's statement related his own personal knowledge from his experience working in a prison to a particular fact of this case regarding semen being found inside a prison. In doing so, White impliedly asked the jury to rely on his

19

specialized knowledge or expertise to reach a conclusion about a disputed factual matter in this case. We agree with the trial court's conclusion that the argument was improper. *See, e.g.*, *Jackson v. State*, 17 S.W.3d 664, 675 (Tex. Crim. App. 2000) ("A prosecutor may not convey to the jury during argument that he possesses specialized knowledge or expertise about a contested factual issue in the case."); *Johnson v. State*, 698 S.W.2d 154, 167 (Tex. Crim. App. 1985) ("The implication of special expertise coupled with an implied appeal to the jury to rely on that expertise in deciding the contested issues before it is improper."); *see also Tucker v. State*, 15 S.W.3d 229, 236 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (improper for the prosecutor to argue, "Autopsy photos always have unzipped clothes. I know it.").

We review a trial court's decision to deny a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Accordingly, we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* To determine whether improper jury argument requires a mistrial, we balance the following three factors:

(1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks);

(2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and

(3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction.

*Id.* at 700. "Only in extreme circumstances where the prejudice is incurable, will a mistrial be required." *Id.* at 699 (quotation omitted).

Here, White's remark was brief and largely inconsequential. The DNA evidence was not seriously rebutted, and appellant incorrectly argues on appeal that the DNA evidence was the "sum and substance of the State's case." Appellant

20

had admitted that Ethan sucked his penis on multiple occasions for one to two minutes, and appellant admitted to ejaculating on the floor of the prison and inside Ethan's mouth. Thus, the evidence supporting the conviction was strong, and the jury certainly would have convicted appellant regardless of the improper argument.

Further, by "sustaining appellant's objection and instructing the jury as it did [to disregard the prosecutor's statement], the trial court sufficiently ameliorated any potential harm." *Id.* at 700. We cannot conclude this was an extreme case with incurable prejudice warranting reversal. *See id.* at 699; *see also Tucker*, 15 S.W.3d at 238 (holding that the prosecutor's argument injecting new facts based on specialized experience was harmless even though the first factor favored reversal because the trial court told the jury to disregard the comment and the evidence of the defendant's self-defense claim was tenuous).

The trial court's decision was within the zone of reasonable disagreement and not an abuse of discretion. Appellant's third issue is overruled.

## V. CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/        Sharon McCally
Justice

Panel consists of Justices Christopher, Jamison, and McCally.
Publish — Tex. R. App. P. 47.2(b).

21