# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00511-CR

---

**Calandra Monee Stanfield, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 27TH DISTRICT COURT OF BELL COUNTY
### NO. 70566, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury convicted Calandra Monee Stanfield of aggravated assault with a deadly weapon, *see* Tex. Penal Code § 22.02(a)(2), and the district court sentenced her to seven years' confinement in the Texas Department of Criminal Justice. Appellant argues on appeal that insufficient evidence supports the verdict, that the district court erred by admitting during the guilt-innocent phase an indictment in an unrelated case, and that she suffered egregious harm from the lack of a limiting instruction in the jury charge. We will affirm the district court's judgment of conviction.

### BACKGROUND

The State alleged that appellant shot Joyce Nsabimana on November 11, 2012, during an altercation at the apartment Nsabimana shared with Keasha Abney. The case was tried to a jury in March 2019. The jury heard testimony from, among others, appellant; her ex-

girlfriend, Keasha Abney; the complainant, Nsabimana; Killeen jail employee MaryAnn McKeon; appellant's friend, Sylvia Miller; Killeen police officers Steven Kirk, Brant Allman, and Drew Martin, and Detective Richard Tramp.[1]

Appellant and Abney dated from 2005 until March 2012. After the breakup, Abney began a relationship with Nsabimana and moved into an apartment with her. Appellant and Abney tried to maintain a friendship despite the breakup but argued frequently. Abney and Nsabimana eventually ended their relationship on November 9, 2012, but continued to share an apartment because they were both on the lease. Later that night, Abney joined appellant and appellant's friend, Zulema Dominguez, at a club. Abney left after arguing with appellant, leaving her phone in Dominguez's truck. Abney went to appellant's home to retrieve it the following day. After talking briefly, Abney asked to accompany appellant while she ran errands for a barbecue that appellant was hosting that day. Appellant agreed even though Abney was significantly intoxicated. After they returned to appellant's residence, Abney asked to stay for the barbecue. Appellant refused because Abney had recently "embarrassed" her on a similar occasion. Abney left and returned to the apartment that she shared with Nsabimana.

Appellant later sent Abney a text message to confirm that Abney had arrived home safely. Nsabimana was using Abney's phone to connect to the internet and saw the message. Nsabimana asked if the sender was appellant, and appellant responded: "Yes, why are you asking?" Nsabimana responded: "Because [Abney]'s obviously a liar. Sorry for bothering you." At trial, Nsabimana explained that she had wanted to "verify that it wasn't [appellant] because me and [Abney] had agreed at that point that we needed to stay away from her[.]" They

---

[1] We take the following factual description from the evidence and testimony admitted at trial.

2

continued to exchange messages until appellant called Abney and told her (in Abney's recounting) to "get your bitch in check." Appellant subsequently called again to say the messages had not stopped and that appellant was coming over to speak to Nsabimana.

Appellant and Dominguez arrived at the apartment complex around midnight. Abney met them on the landing outside the apartment and refused appellant's demand to speak to Nsabimana. Abney testified later that appellant then "reached under me, open[ed] the door and call[ed] [Nsabimana]." Nsabimana came out of the apartment and started to leave until appellant punched her in the face. Nsabimana responded by grabbing appellant in a headlock until Abney separated them. At this point, Abney stood between Nsabimana and appellant; Dominguez stood near Nsabimana. Abney and Dominguez each testified that appellant swung her arm around Abney, and then both heard a "pop." Similarly, Nsabimana testified that she saw appellant "swing her arm, and then we heard a pop and then I realized I got shot." Abney testified that she went inside the apartment to call 911 while Dominguez tended to Nsabimana. Appellant testified that she followed Abney into the apartment and saw Abney place a .380 pistol on the windowsill. Appellant acknowledged that the pistol was hers, but she could not explain how Abney had possession of it. Appellant took the weapon with her as she left in Dominguez's vehicle, a Chevrolet Avalanche.

Shortly thereafter, Officer Kirk received a radio call regarding the shooting and a description of the suspect, who was traveling in a "dark colored Chevy Avalanche." He encountered the vehicle almost immediately and pulled it over. Appellant was in the driver's seat and Dominguez was in the passenger seat. Appellant denied knowing of the shooting and granted permission to search her purse and the vehicle. Officer Kirk testified that he was looking for a .380 caliber handgun because officers at the scene of the shooting had recovered a shell

3

casing of that caliber. He found a .45 pistol in appellant's purse but could not locate the .380. Appellant asked Kirk what sort of weapon he was looking for, and he replied that he was searching for a .380 pistol. She remained silent. Officer Kirk arrested appellant and transported her to Killeen municipal jail.

McKeon was the jail employee responsible for booking appellant into the facility. McKeon informed appellant that McKeon was going to search her and asked if appellant "had anything on her that was going to hurt [McKeon] in any way." McKeon testified that appellant motioned with her hands to the "back of her pants." McKeon found a .380 handgun with a magazine "below [appellant's] waistband, almost in the crack of her buttocks."

While this was occurring, Nsabimana was transported to a hospital in Temple for treatment of her wound. Nsabimana described the events preceding the shooting to the examining nurse, who recorded it in Nsabimana's chart. Shelly Combs, a nurse employed at the hospital who received the same specialized training as the examining nurse, read Nsabimana's statement into the record. It is generally consistent with Abney and Nsabimana's testimony and includes additional details. According to the statement, after Abney separated appellant and Nsabimana, appellant said: "'I'm an E5 in the military. Nobody gives a fuck what I do to you.' And I was turning away. And that's when I think she shot."

Dr. Jason Collins, M.D., testified that he treated Nsabimana for a single gunshot wound that had gone through her body. Detective Richard Tramp testified that the bullet was never recovered. Appellant's friend, Sylvia Miller, testified that she watched the altercation from her parked vehicle and saw Abney shoot Nsabimana. The jury convicted appellant, and the district court imposed a sentence of confinement for seven years. This appeal followed.

4

**DISCUSSION**

Appellant argues in three issues, which we have reordered, that there is insufficient evidence that she shot Nsabimana, that the district court abused its discretion by admitting a copy of an indictment during the guilt-innocence phase charging her with assault in an unrelated case, and that she was egregiously harmed by the omission of a limiting instruction in the jury charge.

**Sufficiency of the Evidence**

Appellant first challenges the sufficiency of the evidence to support her conviction for aggravated assault with a deadly weapon.

In assessing the sufficiency of the evidence to support a criminal conviction, we "consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021). In reviewing the record, we defer "to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020). Each fact need not "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hammack*, 622 S.W.3d at 914.

We measure sufficiency by the elements of the offense as defined by the hypothetically correct jury charge. *Id*. The hypothetically correct charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof

5

or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Walker*, 594 S.W.3d at 336; *see Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (defining hypothetically correct charge).

The hypothetically correct charge for this case required the State to prove that appellant intentionally, knowingly, or recklessly caused bodily injury to Nsabimana and used or exhibited a deadly weapon during the commission of the offense. *See* Tex. Penal Code § 22.02(a)(2). Appellant argues that the evidence is insufficient because even if the jury chose to disbelieve Miller, there is no "smoking gun" evidence to convict appellant because no one testified to seeing her shoot Nsabimana. Appellant is correct that Abney, Dominguez, and Nsabimana each testified that they did not see anyone with a firearm that night. However, there is sufficient circumstantial evidence that appellant was the shooter. *See Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014) ("Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007))). Appellant went to Nsabimana's apartment around midnight armed with a .45 caliber pistol and demanded that Nsabimana to come out of the apartment. When Abney refused to call her, appellant reached around her, opened the door, and shouted for Nsabimana come out. When Nsabimana tried to leave, appellant "hit [her] in the face." Dominguez, Nsabimana, and Abney each testified to appellant making movements consistent with reaching around Abney to shoot Nsabimana, and each witness heard a "pop" immediately prior to the gunshot injury.

The evidence presented at trial would have allowed the jury to reasonably infer that Appellant then left the scene, taking the .380 pistol with her, and concealed it on her person to prevent Officer Kirk from finding it. By appellant's account, she only told McKeon about it

6

out of concern that bringing a weapon into the jail "would be an additional charge." Appellant's flight from the scene and attempt to conceal the weapon reasonably support an inference of guilt. *See Hammack*, 622 S.W.3d at 918 n. 33 (noting that "evidence of flight or escape can support an inference of guilt" (citing *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994))); *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (explaining that "[a]ttempts to conceal incriminating evidence . . . are probative of wrongful conduct"); *see also Richardson v. State*, No. 13-18-00172-CR, 2019 WL 1716822, at \*5 (Tex. App.—Corpus Christi Apr. 18, 2019, no pet.) (mem. op., not designated for publication) (holding that "evidence of Richardson attempting to conceal evidence, including the firearm, was admissible to prove his consciousness of guilt"). We conclude that the cumulative force of all the evidence considered in the light most favorable to the verdict would enable a rational jury to conclude that appellant shot Nsabimana. Accordingly, we overrule appellant's first issue.

**Admission of Evidence**

Appellant argues in her second issue that the district court erred by admitting during the guilt-innocence phase a copy of a 2003 indictment charging her with assault in an unrelated case. We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion "when it acts without reference to any guiding rules and principles" such that its ruling is arbitrary or unreasonable. *Id.*; *see Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018) (explaining that under abuse-of-discretion standard, "the trial court's decision to admit or exclude evidence will be upheld as long as it was within the zone of reasonable disagreement").

7

Appellant stated during her testimony that she had no "history of being in trouble with the police" in her "adult life." On cross-examination, the State asked how old she was in 2003. Appellant replied that she was twenty at the time, and the State showed her a copy of an indictment dated March 18, 2003, charging her with the aggravated assault of Jason Gandy by striking him with an automobile. The district court admitted the indictment as State's Exhibit 30 over appellant's objection. Appellant now argues that the indictment was inadmissible under Rule of Evidence 613(a).[2]

Rule 613(a) provides in relevant part that "[e]xtrinsic evidence of a witness's prior inconsistent statement is not admissible unless the witness is first examined about the statement and fails to unequivocally admit making the statement." Tex. R. Evid. 613(a)(4). Appellant argues that admitting the indictment violated Rule 613 because appellant admitted that she had, in fact, previously been indicted for aggravated assault. However, the plain language of Rule 613 allows the presentation of a prior inconsistent *statement*. *See id.*; *Mumphrey v. State*, 155 S.W.3d 651, 660 (Tex. App.—Texarkana 2005, pet. ref'd) ("Rule 613 governs the admissibility of prior inconsistent statements for purposes of impeachment."). An indictment "is a written instrument presented to a court by a grand jury charging a person with the commission of an offense," *see Jenkins v. State*, 592 S.W.3d 894, 898 n. 13 (Tex. Crim. App. 2018) (citing Tex. Const. art. V, § 12), it is not a written or oral statement by a witness to which Rule 613(a)

---

[2] Appellant also argues under this issue that "[i]f prior bad acts are not relevant apart from supporting an inference of character, they are absolutely inadmissible under Rule 404(b)." However, appellant's brief contains no legal argument or citation to authorities to support this assertion. To the extent that appellant attempts to challenge the admission of the indictment under Rule 404(b), we overrule it as inadequately briefed. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Lucio v. State*, 353 S.W.3d 873, 877–78 (Tex. Crim. App. 2011) (holding issue inadequately briefed when brief contained single-sentence assertion unaccompanied by argument or citation to authorities).

might apply,[3] *see Abdygapparova v. State*, 243 S.W.3d 191, 204 (Tex. App.—San Antonio 2007, pet. ref'd) ("Texas Rule of Evidence 613(a) pertains to a prior inconsistent *statement made by the witness*." (internal quotation marks omitted) (emphasis added)). *Cf. Batteas v. State*, No. 02-05-036-CR, 2006 WL 349709, at *9 (Tex. App.—Fort Worth Feb. 16, 2006, pet. ref'd) (mem. op., not designated for publication) (holding witness's "prior demeanor was not a prior statement" for Rule 613(a) purposes). We conclude that appellant has not shown that the district court abused its discretion by admitting State's Exhibit 30, and we overrule appellant's second issue.

**Jury Charge**

Appellant argues in her final issue that the lack of a limiting instruction in the jury charge allowed the jury to consider the indictment admitted as State's Exhibit 30 and that she suffered egregious harm from this error.

We review alleged jury-charge error through a two-step process, first determining whether the charge was erroneous and, if so, whether sufficient harm resulted from the error to require reversal. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). The degree of harm required for reversal depends on whether the complaint of jury-charge error was preserved in the trial court. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018); *see Almanza*

---

[3] Another part of Rule 613 pertains to examining a witness about "circumstances or statements that tend to show the witness's bias or interest." Tex. R. Evid. 613(b). Under subsection (b), "[e]xtrinsic evidence of a witness's bias or interest is not admissible unless the witness is first examined about the bias or interest and fails to unequivocally admit it." *Id.* R. 613(b)(4). Appellant did not cite this subsection or address whether the indictment pertains to her "bias or interest." To the extent that appellant intended to argue on appeal that admitting the indictment violated Rule 613(b), as opposed to 613(a), we overrule it as inadequately briefed. *See* Tex. R. App. P. 38.1(a)(i) (providing that appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

*v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claimed jury-charge error).

A trial court has a duty to deliver to the jury "a written charge distinctly setting forth the law applicable to the case[.]"  Tex. Code Crim. Proc. art. 36.14.  The charge here provided, in relevant part:

> You are instructed that if there is any testimony before you in the case regarding the Defendant's having committed offenses other than the offense alleged against her in the indictment in the case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any were committed, and even then you only consider the same in determining the identity, intent, knowledge, preparation, motive, or plan of the Defendant, in connection with the offense, if any, alleged against her in the indictment in the case, and for no other purpose.

Appellant argues that the district court erred by instructing the jury that it could consider extraneous conduct because State's Exhibit 30 was admitted for impeachment purposes only. The State responds that there was no error because the district court was not required to limit the use of that evidence in the charge.  We agree with the State.

Rule of Evidence 105(a) provides:  "If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on request, must restrict the evidence to its proper scope and instruct the jury accordingly." Tex. R. Evid. 105(a).  If a defendant does not request a limiting instruction at the time the evidence is admitted, "the trial judge has no obligation to limit the use of that evidence later in the jury charge." *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007) (citing *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001)); *see Williams v. State,* 273 S.W.3d 200, 230 (Tex. Crim. App. 2008) ("A failure to request a limiting instruction at the time evidence is presented renders the evidence admissible for all purposes and relieves the trial judge

10

of any obligation to include a limiting instruction in the jury charge.")  Because appellant's trial counsel did not request an instruction, the district court was under no duty to limit its use by including a limiting instruction in the jury charge.  *See Delgado*, 235 S.W.3d at 251; *Williams,* 273 S.W.3d at 230; *Irielle v. State*, 441 S.W.3d 868, 880 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding trial judge not required to include extraneous-offense instruction in jury charge when defendant's counsel failed to request limiting instruction).  We overrule appellant's final issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the district court's judgment.

_____

Edward Smith, Justice

Before Justices Baker, Kelly, and Smith

Affirmed

Filed:   July 23, 2021

11